Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/03/2017 09:08 AM CST

State of Nebraska, appellee, v.
Eric O. Rocha, Sr., appellant.
___ N.W.2d ___

Filed February 3, 2017.    No. S-16-009.

1. **Evidence: Appeal and Error.** In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or reweigh the evidence; such matters are for the finder of fact.

2. ____: ____. In reviewing a sufficiency of the evidence claim, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

3. ____: ____. A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.

4. **Trial: Evidence: Words and Phrases.** To be admitted at trial, evidence must be relevant, meaning evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

5. **Rules of Evidence.** Under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016), even evidence that is relevant is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

6. **Rules of Evidence: Testimony.** Under Neb. Evid. R. 701 and 702, Neb. Rev. Stat. §§ 27-701 and 27-702 (Reissue 2016), opinion testimony, whether by a lay or expert witness, is permissible only if it is helpful to the trier of fact in making a determination of a fact in issue.

7. **Witnesses: Judgments.** The credibility of witnesses is a determination within the province of the trier of fact.

8. **Rules of Evidence: Witnesses: Testimony.** While certain prescribed methods of impeaching a witness' credibility are allowed under the rules of evidence, it is improper for a witness to testify whether another person may or may not have been telling the truth in a specific instance.

9. **Prosecuting Attorneys: Testimony.** A prosecutor may not express personal opinions as to the credibility or veracity of the defendant's testimony, but may make comments resting on reasonably drawn inferences from the evidence.

10. **Criminal Law: Prosecuting Attorneys.** It is highly improper and generally prejudicial for a prosecuting attorney in a criminal case to declare to the jury his or her personal belief in the guilt of the defendant, unless such belief is given as a deduction from evidence.

11. **Extrajudicial Statements.** Where the proponent of evidence offers an interrogator's out-of-court statements that comment on a person's credibility for the purpose of providing context to a defendant's statements, the interrogator's statements are only admissible to the extent that the proponent of the evidence establishes that the interrogator's statements are relevant to their proffered purpose.

12. **Trial: Rules of Evidence: Police Officers and Sheriffs: Evidence: Extrajudicial Statements.** Statements by law enforcement officials on the veracity of the defendant or other witnesses, made within a recorded interview played for the jury at trial, are to be analyzed under the ordinary rules of evidence. Such commentary is not admissible to prove the truth of the matter asserted in the commentary.

13. **Evidence: Words and Phrases.** To be relevant, evidence must be probative and material. Evidence is probative if it has any tendency to make the existence of a fact more or less probable than it would be without the evidence. A fact is material if it is of consequence to the determination of the case.

14. **Prosecuting Attorneys: Juries.** When a prosecutor asserts his or her personal opinions, the jury might be persuaded by a perception that those opinions are correct because of counsel's position as prosecutor, rather than being persuaded by the evidence. The prosecutor's opinion carries with it the imprimatur of the government and may induce the jury to trust the government's judgment rather than its own view of the evidence.

15. **Evidence: Police Officers and Sheriffs.** Admitting statements by a law enforcement officer calling into question a defendant's honesty and stating conclusions about a defendant's guilt carries with it a risk of unfair prejudice.

16. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

17. **Motions to Suppress: Pretrial Procedure: Trial: Appeal and Error.** When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearings on the motion to suppress.

18. **Constitutional Law: Search and Seizure.** The ultimate touchstone of the Fourth Amendment, and article I, § 7, of the Nebraska Constitution, is reasonableness.

19. **Search and Seizure: Warrantless Searches.** Searches and seizures must not be unreasonable. Searches without a valid warrant are per se unreasonable, subject only to a few specifically established and well-delineated exceptions.

20. **Warrantless Searches: Arrests: Motor Vehicles.** Among the exceptions to the warrant requirement are searches incident to a lawful arrest and the automobile exception.

21. **Warrantless Searches: Motor Vehicles.** It is the characteristic mobility of all automobiles, not the relative mobility of a car in a given case, that justifies the automobile exception to the warrant requirement.

22. **Warrantless Searches: Motor Vehicles: Words and Phrases.** The test for ready mobility under the automobile exception to the warrant requirement is whether a vehicle is readily capable of being used on the highways and is stationary in a place not regularly used for residential purposes.

23. \_\_\_\_: \_\_\_\_: \_\_\_\_. The requirement of ready mobility for the automobile exception to the warrant requirement is met whenever a vehicle that is not located on private property is capable or apparently capable of being driven on the roads or highways.

24. **Probable Cause: Words and Phrases.** Probable cause is a flexible, commonsense standard that depends on the totality of the circumstances.

25. **Probable Cause: Search and Seizure.** Probable cause to search requires that the known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that contraband or evidence of a crime will be found.

26. **Motions for Mistrial: Appeal and Error.** Whether to grant a motion for mistrial is within the trial court's discretion, and an appellate court will not disturb its ruling unless the court abused its discretion.

27. **Criminal Law: Motions for Mistrial: Appeal and Error.** A mistrial is properly granted in a criminal case where an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.

28. **Constitutional Law: Criminal Law: Due Process: Proof.** Under the Due Process Clause of the 14th Amendment to the U.S. Constitution and under the Nebraska Constitution, in a criminal prosecution, the State must prove every ingredient of an offense beyond a reasonable doubt and may not shift the burden of proof to the defendant by presuming an ingredient upon proof of the other elements of the offense.

29. **Verdicts: Juries: Jury Instructions: Presumptions.** Absent evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict.

30. **Jury Instructions: Judgments: Appeal and Error.** Whether the jury instructions given by a trial court are correct is a question of law. When reviewing questions of law, an appellate court resolves the questions independently of the conclusion reached by the lower court.

31. **Lesser-Included Offenses: Jury Instructions: Evidence.** A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense.

32. **Lesser-Included Offenses.** To determine whether one statutory offense is a lesser-included offense of the greater, Nebraska courts look to the elements of the crime and not to the facts of the case.

33. \_\_\_\_. The test for determining whether a crime is a lesser-included offense is whether the offense in question cannot be committed without committing the lesser offense.

34. **Criminal Attempt.** Whether a defendant's conduct constitutes a substantial step toward the commission of a particular crime and is an attempt is generally a question of fact.

35. **Controlled Substances.** A person possesses a controlled substance when he or she knows of the nature or character of the substance and of its presence and has dominion or control over it.

36. **Controlled Substances: Evidence: Circumstantial Evidence: Proof.** Possession can be either actual or constructive, and constructive possession of an illegal substance may be proved by direct or circumstantial evidence.

37. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested instruction, an appellant

has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

Appeal from the District Court for Scotts Bluff County: Randall L. Lippstreu, Judge. Affirmed in part, and in part vacated.

Todd W. Lancaster, of Nebraska Commission on Public Advocacy, for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Wright, J.

## I. NATURE OF CASE

Eric O. Rocha, Sr., appeals his convictions of possession of a controlled substance, methamphetamine, and of driving under suspension. We conclude that there was insufficient evidence for his conviction of driving under suspension and vacate that conviction. Because we find all of his other assignments of error to be either without merit or harmless error, we affirm the judgment of the district court in all other respects.

## II. BACKGROUND

### 1. Police Report, Arrest of Rocha, and Search of Vehicle

On January 17, 2015, a Scottsbluff Police Department officer, William Howton, was dispatched on a call of suspicious activity. The caller reported that a male individual kept coming up to the door and asking for the caller's son, who was not at home. The individual's vehicle was parked in the alleyway.

Howton drove toward the scene. About a block from the house, he observed a vehicle matching the description given

to Howton, traveling in the opposite direction. He turned around, and before he reached the vehicle, it had pulled over and parked. The driver, Rocha, and his passenger, Constance Trejo, exited the vehicle. Howton pulled up behind the parked vehicle. He approached Rocha and instructed Trejo to step back by his police car.

Howton noticed that Rocha appeared to be "really nervous" and was putting his hands in his pockets, trying to text on his cell phone. Howton asked for and obtained Rocha's consent to search his person and conducted a search. In Rocha's front sweatshirt pocket, he found residue of some green leafy substance that appeared to be marijuana. Howton checked to see if there were any warrants for Rocha's arrest or a suspended license. He was told that Rocha's license was suspended and arrested Rocha for driving under suspension. Rocha was handcuffed and placed in the back of a police car.

Another police officer who had arrived on the scene questioned Trejo. The officer obtained consent to search Trejo's person and purse and conducted the search. A capsule containing what appeared to be marijuana, a glass smoking device with what appeared to be burnt marijuana, and a black digital scale with white crystal-like residue were found in the purse. According to the officer, the white residue on the scale appeared to be methamphetamine. Trejo was arrested and placed in the back of a police car.

After Rocha's arrest, Howton searched the vehicle. He did not request consent from Rocha for the search of the vehicle. Howton's basis for the search was the "narcotics that were located on [Rocha] and the search of . . . Trejo." Howton planned on impounding the vehicle after Rocha's arrest, but conceded that the search was not an inventory search.

Between the vehicle's center console and driver's seat, Howton found a small canister with a cover design like a Wyoming license plate and the word "GANGSTA" on it. In the canister were found two glass vials and two small plastic bags containing a crystal-like substance later confirmed to be methamphetamine. Between the center console and the

driver's seat was a plastic bag containing what appeared to be marijuana and a glass pipe with what appeared to be burnt marijuana on it.

A shaving-kit-style bag was found in the center console of the vehicle. Inside the bag was a clear glass pipe, the type often used for smoking methamphetamine or other narcotics. Also inside the bag were two digital scales, a blue pouch with two plastic bags containing what appeared to be marijuana, rolling papers, and a red plastic container with what appeared to be marijuana.

Howton also found a vehicle registration from Wyoming in the name of an individual who was neither Rocha nor Trejo. It was reported that Rocha may have had the vehicle because the registration's owner had been arrested in Wyoming.

## 2. POLICE INTERVIEW OF ROCHA

After his arrest, Rocha was taken to the Scottsbluff Police Department for an interview, which was videotaped. Before the interview, Howton advised Rocha of his *Miranda*[1] rights, which he waived in writing.

Rocha initially denied knowing about the canister found in the vehicle. He later told Howton in the following exchange that he had loaned his cousin $700 and that she gave him "some stuff" as collateral:

> [Rocha]: It feels like I am being pressured into . . .
>
> [Howton]: And, I've told you several times . . .
>
> [Rocha]: But see, not, not by you, by the same person, Howton, the same person who said that she was my family, the same person that this morning told me I love you, I love you mijo, stay out of trouble. But can you help me out, because she needed a come up, because her and [another individual] don't have no money. So, yeah, I gave her 700 as a loan. I was given some stuff to hold until she got the money back.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[Howton]: So you were holding that, that meth as, like, collateral?

[Rocha]: Yeah, as a guarantee to get my money back. And I, I don't know. She got more than what she was looking for or whatever and was either that or she didn't have the money to pay me back.

At trial, Rocha's attorney argued that while he may have received the Wyoming canister as collateral, he did not know that it contained methamphetamine.

### 3. Howton's Interview of Rocha and Rocha's Motion in Limine

During the interview, Howton made several statements to Rocha that the methamphetamine found in the vehicle belonged to Rocha, that Howton could prove it belonged to Rocha, and that Rocha was not being honest with Howton. In Rocha's amended motion in limine, he objected to the admission of several portions of the interview recording on the basis that it constituted impermissible opinion testimony as to whether the methamphetamine belonged to Rocha and whether Rocha was being honest. He also objected on the basis of rule 403.[2] While the court sustained other portions of the motion in limine based on other grounds, the motion was denied with regard to the portions of the interview in which Howton made these statements about Rocha's ownership of the drugs and his honesty. Howton's statements and Rocha's responses include the following:

[Howton]: I know the little blue container of meth is yours.

[Rocha]: No, how?

[Howton]: I know it is yours [Rocha]. I, looking right now, all I am just asking is for your honesty. To be honest with me.

[Rocha]: I am being honest[.]

[Howton]: I already know it is yours man.

---

[2] See Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016).

And:

> [Howton]: . . . What I'm saying is, is, I know that canister is yours, alright? I know it's yours. And this point, man, you just, I'm asking for your honesty, and
>
> [Rocha]: I am telling you, that canister, not mine.
>
> [Howton]: Ok, well, I'm not gonna, I'm not buying that.
>
> [Rocha]: But, see . . .
>
> [Howton]: . . . I know it's yours.
>
> [Rocha]: How?
>
> [Howton]: . . . I know it's yours, man.
>
> [Rocha]: Everything.
>
> [Howton]: You, you can tell me, you can tell me a hundred times over that this belongs to [another individual]. And I know it's not. I know it's yours.

And:

> [Howton]: Right, but you're, you're not being honest though, you're not . . .
>
> [Rocha]: No. I'm saying I'll, I'll, I'm being honest with you.

In its order denying these portions of the motion in limine, the court explained that "[t]his is an interview technique best explained by Howton at trial." Before the above portions of the interview were admitted at trial and before the video was played to the jurors, the court gave the following limiting instruction:

> You are about to see and hear a recording of an interview with . . . Rocha . . . and . . . Howton. I have ordered parts of the recording to be deleted for efficiency purposes and because the deleted portions are not relevant for purposes of this trial. You are not to concern yourself concerning the contents of the deleted portions, consider them at all in your deliberations, or speculate as to their content. During the interview you will hear assertions by . . . Howton that he knows the alleged controlled substance[] belongs to . . . Rocha . . . and that he does not

believe . . . Rocha . . . is being honest with him. These statements are part of interview techniques and should not be considered as substantive evidence in any way in determining if . . . Rocha [was in] possession of the alleged controlled substance, nor should they be given any weight when considering the truthfulness of any statements made by . . . Rocha . . . .

At trial, Rocha objected to the playing of the video, which objection was overruled. And an instruction substantially similar to the one given before the playing of the video was included in the jury instructions at the end of the trial.

### 4. MOTION TO SUPPRESS: SEARCH OF VEHICLE

Before trial, Rocha moved to suppress any evidence referring to the search of the vehicle and any evidence found or statements made as a result thereof. The court denied Rocha's motion. The court found that the initial encounter between Howton and Rocha was not a Fourth Amendment seizure because Rocha had already parked the vehicle and begun exiting with Trejo before Howton pulled up behind them. The court said it was a "First-Tier Police-Citizen Encounter."

The court concluded that the police had probable cause to believe that contraband could be located in the vehicle based on the suspected drugs and drug paraphernalia found on Rocha and Trejo. The court agreed with Rocha's argument that under *Arizona v. Gant*,[3] the search was not permissible as a search incident to lawful arrest because Rocha was arrested for driving under suspension. But the court concluded that the search was permissible as a search under the "'automobile exception'" to the warrant requirement because there was probable cause to search the vehicle and the vehicle was readily mobile. The court denied Rocha's motion in limine in its entirety.

---

[3] *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009).

### 5. ROCHA'S TRIAL AND CONVICTION

Rocha was charged with (1) possession of a controlled substance (methamphetamine), a Class IV felony; (2) driving under suspension, a Class III misdemeanor; (3) possession of a controlled substance (marijuana), a Class IV misdemeanor; and (4) possession of drug paraphernalia, an infraction. The information alleged that Rocha was a habitual criminal for the purpose of enhancement. The charges of possession of marijuana and drug paraphernalia were not tried.

### (a) Questioning and Testimony About Testing of Evidence

At trial, Howton conceded on cross-examination that he did not request any fingerprint or DNA testing of the items found in the vehicle. On redirect, the prosecution questioned Rocha:

Q. And you didn't have any intention of sending this stuff down for DNA or print testing?

A. If he wouldn't have admitted to it, well, I would have consulted with my sergeant or someone to see if they wanted us to send for DNA.

Q. And as far as the testing, you didn't send it down but it's available at your office, right, in the evidence locker?

A. Yes.

Q. So if somebody wants to have their own independent test done on that stuff you'll send it out for them, right?

[Rocha's attorney]: Judge, I'm going to object at this time, it's shifting the burden.

THE COURT: Sustained.

Q. Well, let me ask you this, did you send it out to anyone else for testing?

A. No.

Q. At the request of anyone else?

[Rocha's attorney]: Judge, again, the same objection, shifting the burden, trying to allude.

The Court: Overruled.

Q. Did you send it out on behalf of or at the request of anyone other than the Scottsbluff Police Department?

A. No.

Rocha moved for mistrial on the basis of the State's "shifting the burden," which motion was denied. The court included the following jury instruction with regard to the burden of proof: "There was testimony at trial that Rocha never requested any scientific testing of evidence. You must disregard that testimony in its entirety. Rocha has pleaded not guilty and is presumed to be innocent. The State's burden to prove each element of a crime charged never shifts to a defendant."

### (b) Rocha's Driving Record

At trial, the State offered a "Complete Abstract of Record" and complete file of Rocha's driving record from the Nebraska Department of Motor Vehicles, along with a cover letter from that department's director. The district court sustained some of Rocha's objections to the admission of his driving record and admitted a redacted version that included the cover letter and part of the abstract. The court received both the unredacted and redacted versions into the record. Only the redacted version was given to the jury.

### (c) Redacted Record

The abstract was printed on June 11, 2015, and it lists Rocha's driving status as revoked. It indicates that his license was issued on January 23, 2009, and had an expiration date of March 23, 2014. The cover letter, which is also dated June 11, 2015, states that the record is a complete driving record for Rocha and that his driving privilege had not been reinstated. It also states that Rocha did not have a "Work or Ignition Interlock Permit" on January 17, 2015. Unlike the complete and unredacted version, the redacted version does not indicate when Rocha's license was suspended. Most importantly, while the redacted version indicates that his license was suspended on the date the abstract was printed, June 11, 2015, it does not

indicate whether the suspension occurred before or after the date of Rocha's arrest, January 17.

### (d) Jury Instructions

Before the case was submitted to the jury, Rocha objected to the court's proposed jury instructions. Rocha requested that the court include in an instruction on the possession of a controlled substance charge the lesser-included offense of *attempted* possession of a controlled substance. The court denied the request because it concluded that the evidence did not warrant an attempt instruction.

### (e) Verdicts and Sentences

Rocha was found guilty of possession of methamphetamine and driving under suspension. With the habitual criminal enhancement, Rocha was sentenced to a mandatory minimum of 10 years' imprisonment to a maximum of 15 years' imprisonment on the possession of a controlled substance conviction and 90 days' imprisonment for driving under suspension.

### III. ASSIGNMENTS OF ERROR

Rocha assigns the following errors on appeal: (1) There was insufficient evidence to prove venue; (2) the district court erred in denying Rocha's amended motion in limine, allowing the jury to hear portions of the recorded police interview in which Howton asserted that Rocha was not being honest, that the methamphetamine belonged to Rocha, and that he could prove the methamphetamine belonged to Rocha; (3) the district court erred in denying Rocha's motion to suppress the evidence found by police in the warrantless search of the vehicle after Rocha's arrest; (4) the district court erred in overruling Rocha's objection to questions by the prosecution that switched the burden of proof and in denying Rocha's motion for mistrial on the same grounds; (5) there was insufficient evidence to sustain Rocha's conviction for driving under suspension; and (6) the court erred in denying Rocha's request for a jury instruction on the lesser-included offense of attempted possession of a controlled substance.

## IV. ANALYSIS

### 1. Insufficiency of Evidence: Venue and Driving Under Suspension

Rocha raises two assignments of error challenging the sufficiency of the evidence: There was insufficient evidence for both convictions because the prosecution failed to prove venue, and there was insufficient evidence to support the driving under suspension conviction. At oral argument, Rocha's attorney conceded that there was sufficient evidence to prove venue.

### (a) Standard of Review

[1,2] In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or reweigh the evidence; such matters are for the finder of fact.[4] The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[5]

### (b) Driving Under Suspension

Rocha argues that there was insufficient evidence to prove him guilty beyond a reasonable doubt on the charge of driving under suspension. The relevant statute provides, "It shall be unlawful for any person to operate a motor vehicle (a) during any period that his or her operator's license has been suspended, [or] (b) after a period of revocation but before issuance of a new license . . . ."[6]

The evidence presented at trial was Howton's testimony that Rocha was driving on January 17, 2015, the redacted version

---

[4] *State v. Rothenberger*, 294 Neb. 810, 885 N.W.2d 23 (2016); *State v. Jenkins*, 294 Neb. 684, 884 N.W.2d 429 (2016).

[5] *Id.*

[6] Neb. Rev. Stat. § 60-4,108(2) (Cum. Supp. 2016).

of the abstract of Rocha's driving record, and the cover letter from the director of the Department of Motor Vehicles.

The abstract indicates that at the time it was printed, June 11, 2015, Rocha's license was suspended. The cover letter also indicates that Rocha's driving privilege had not been reinstated. But what the redacted version of the abstract presented to the jury does not show is that Rocha's license was suspended prior to January 17, 2015, the date Rocha was alleged to have driven under suspension. But without evidence when the suspension of Rocha's license occurred, the evidence was insufficient to establish that his license was suspended on January 17. At most, the redacted abstract shows that Rocha had no interlock devices on his vehicle as of January 17 and that his license was expired on January 17. It does not show when his license was suspended or that it had been suspended prior to that date. Moreover, while there was evidence presented at the hearing on the motion to suppress that Howton was told by dispatch that Rocha's license was suspended, this evidence was not presented at trial.

Because there was no evidence that Rocha's license was suspended on January 17, 2015, we conclude that even viewing the evidence in the light most favorable to the prosecution, no rational jury could have found beyond a reasonable doubt that Rocha was operating a motor vehicle "during any period that his . . . operator's license has been suspended" or "after a period of revocation but before issuance of a new license."[7] The mere fact of Rocha's arrest for driving under suspension is insufficient, standing alone, to sustain his conviction. We vacate Rocha's conviction for driving under suspension.

### 2. Denial of Motion in Limine: Police Statements on Credibility of Defendant in Recorded Interrogation

Rocha argues that the district court erred in not granting his motion in limine to exclude portions of the recorded

---

[7] See *id.*

interview of Rocha by Howton from being played for the jury. In these portions of the interview, Howton stated that the methamphetamine belonged to Rocha, that he could prove it belonged to Rocha, and that Rocha was not being honest with him. Rocha argues that this is equivalent to one witness' testifying about the credibility of another witness.

### (a) Standard of Review

[3] A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.[8]

### (b) Comments on Credibility
### of Witnesses

[4] Before addressing Rocha's arguments, we review some of our foundational rules of evidence. To be admitted at trial, evidence must be relevant,[9] meaning "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[10] We have explained the relevancy rule, stating:

> Relevance is a relational concept and carries meaning only in context. A right to introduce evidence depends upon there being an issue of fact that is of consequence to the determination of an action. . . . First, evidence may be irrelevant if it is directed at a fact not properly an issue under the substantive law of the case. . . . Second, if the evidence fails to alter the probabilities of the existence or nonexistence of a fact in issue, the evidence is irrelevant.[11]

[5] Under rule 403, even evidence that is relevant is not admissible if its probative value is substantially outweighed

---

[8] *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016).

[9] See Neb. Evid. R. 402, Neb. Rev. Stat. § 27-402 (Reissue 2016).

[10] Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 2016).

[11] *State v. Harrold*, 256 Neb. 829, 852, 593 N.W.2d 299, 317 (1999).

by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.[12]

[6] Lay witnesses may testify only as to factual matters based upon their personal knowledge.[13] Under rules 701 and 702,[14] opinion testimony, whether by a lay or expert witness, is permissible only if it is helpful to the trier of fact in making a determination of a fact in issue.[15] The "'ultimate issue'" rule was an evidentiary rule in many jurisdictions that prohibited witnesses from giving opinions or conclusions on an ultimate fact in issue because such testimony, it was believed, "'usurps the function' or 'invades the province' of the jury."[16] The ultimate issue rule was abolished in Nebraska by rule 704, which provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."[17] Under rule 704, the basic approach to opinions, lay and expert, is to admit them when helpful to the trier of fact.[18] But the abolition of the ultimate issue rule does not lower the bar so as to admit all opinions, because under rules 701 and 702, opinions must be helpful to the trier of fact, and rule 403 provides an additional basis

---

[12] § 27-403.

[13] Neb. Evid. R. 602, Neb. Rev. Stat. § 27-602 (Reissue 2016).

[14] Neb. Evid. R. 701 and 702, Neb. Rev. Stat. §§ 27-701 and 27-702 (Reissue 2016).

[15] See *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990).

[16] See 1 McCormick on Evidence § 12 at 80-81 (Kenneth S. Broun et al. eds., 7th ed. 2013 & Supp. 2016). See, also, *Chicago, R. I. & P. R. Co. v. Holmes*, 68 Neb. 826, 94 N.W. 1007 (1903); R. Collin Mangrum, Mangrum on Nebraska Evidence 760 (2016); Fed. R. Evid. 704.

[17] Neb. Evid. R. 704, Neb. Rev. Stat. § 27-704 (Reissue 2016). See, also, Fed. R. Evid. 704.

[18] *State v. Reynolds, supra* note 15 (quoting Fed. R. Evid. 704 advisory committee notes); R. Collin Mangrum, *Opinion and Expert Testimony in Nebraska*, 27 Creighton L. Rev. 85 (1993).

of exclusion.[19] Under these rules, a witness may not give an opinion as to a defendant's guilt or how the case should be decided, but, rather, must leave the conclusions to be drawn by the trier of fact, because such opinions are not helpful.[20]

[7,8] The credibility of witnesses is a determination within the province of the trier of fact.[21] Because making credibility determinations is the role of the trier of fact, testimony that usurps that role is not helpful and thus is improper opinion testimony under rules 701 and 702.[22] While certain prescribed methods of impeaching a witness' credibility are allowed under the rules of evidence,[23] it is improper for a witness to testify whether another person may or may not have been telling the truth in a specific instance.[24] Thus, we have said, "it is totally improper for one witness to testify as to the credibility of another witness [because the] question of any witness' credibility is for the jury."[25]

[9,10] We have also said that a prosecutor may not express personal opinions as to the credibility or veracity of the defendant's testimony, but may make comments resting on reasonably drawn inferences from the evidence.[26] One of the

---

[19] *State v. Reynolds, supra* note 15.

[20] See, *id.*; *State v. Kozisek*, 22 Neb. App. 805, 861 N.W.2d 465 (2015); *State v. Myers*, 15 Neb. App. 308, 726 N.W.2d 198 (2006).

[21] See *State v. Beermann*, 231 Neb. 380, 436 N.W.2d 499 (1989). See, also, *United States v. Bailey*, 444 U.S. 394, 100 S. Ct. 624, 62 L. Ed. 2d 575 (1980).

[22] See *State v. Beermann, supra* note 21 (quoting *State v. Romero*, 147 Wis. 2d 264, 432 N.W.2d 899 (1988)).

[23] E.g., Neb. Evid. R. 608, Neb. Rev. Stat. § 27-608 (Reissue 2016).

[24] *State v. Castillo-Zamora*, 289 Neb. 382, 855 N.W.2d 14 (2014); *State v. Archie*, 273 Neb. 612, 733 N.W.2d 513 (2007); *State v. Beermann, supra* note 21. See, also, 31A Am. Jur. 2d *Expert and Opinion Evidence* § 16 (2012).

[25] *State v. Beermann, supra* note 21, 231 Neb. at 396, 436 N.W.2d at 509.

[26] See *State v. Gonzales*, 294 Neb. 627, 884 N.W.2d 102 (2016). See, also, Neb. Ct. R. of Prof. Cond. § 3-503.4.

rationales for this prohibition is that "[t]he prosecutor's opinion carries with it the imprimatur of the government and may induce the jury to trust the government's judgment rather than its own view of the evidence."[27] We have similarly said that it is highly improper and generally prejudicial for a prosecuting attorney in a criminal case to declare to the jury his or her personal belief in the guilt of the defendant, unless such belief is given as a deduction from evidence.[28]

Rocha argues that allowing the portions of the recorded interview in which Howton asserts that the methamphetamine belonged to Rocha, that Rocha knew the container contained methamphetamine, that he could prove the methamphetamine belonged to Rocha, and that Rocha was not being honest, is akin to allowing testimony as to Rocha's truthfulness or his guilt. Rocha reasons that because Howton could not testify in court that the methamphetamine belonged to Rocha, that Rocha knew the container contained methamphetamine, or that Rocha was not being honest about whether the methamphetamine was his, it is likewise improper for these statements to be presented to the jury in the video of the interview. One court has also analogized similar statements to a prosecutor's personal opinion about the defendant's guilt, which is inadmissible at trial.[29]

We have not addressed the issue of whether a statement made by law enforcement about the defendant's credibility or guilt, in the context of a recorded interview played for the jury at trial, is permissible. Courts in other jurisdictions have addressed and "have struggled with the issue of whether credibility statements made by interrogating officers in the course of a videotaped interrogation should be played for the jury."[30]

---

[27] *State v. Gonzales, supra* note 26, 294 Neb. at 646, 884 N.W.2d at 117-18.

[28] See *State v. Green*, 287 Neb. 212, 842 N.W.2d 74 (2014).

[29] *State v. Elnicki*, 279 Kan. 47, 105 P.3d 1222 (2005).

[30] *State v. Cordova*, 137 Idaho 635, 640, 51 P.3d 449, 454 (Idaho App. 2002). See, also, *Lanham v. Com.*, 171 S.W.3d 14 (Ky. 2005); *State v. Gaudreau*, 139 A.3d 433 (R.I. 2016).

Some courts have found such statements to be inadmissible.[31] In *State v. Elnicki*,[32] the Supreme Court of Kansas considered whether the trial court erred in admitting statements by police in a recorded interview in which the police made such statements as "'you just told me a flat out lie,'" "'[y]ou're sitting here bullshitting me,'" and "'[y]ou're weaving a web of fucking lies, man,'" among others. The court began its analysis with the rule that a witness may not express an opinion on the credibility of another witness.[33] It concluded that it was error to allow the jury to hear these comments, explaining that "[a] jury is clearly prohibited from hearing such statements from the witness stand in Kansas and likewise should be prohibited from hearing them in a videotape, even if the statements are recommended and effective police interrogation tactics."[34] In light of this and other trial errors, the court reversed, and remanded for a new trial.[35]

Similarly, in *State v. Demery*,[36] the Supreme Court of Washington concluded in a divided opinion that it was error to admit a recorded interview in which police detectives suggested the defendant was lying.[37] The controlling opinion on the issue of whether admitting the statements was error wrote:

> The [plurality opinion] concludes a recorded expression of an officer's opinion that a suspect is lying is admissible at trial even though the same officer would not be permitted to offer such an opinion in live testimony.

---

[31] *Com. v. Kitchen*, 730 A.2d 513 (Pa. Super. 1999); *Sweet v. State*, 234 P.3d 1193 (Wyo. 2010).

[32] *State v. Elnicki, supra* note 29, 279 Kan. at 51-52, 105 P.3d at 1226 (emphasis omitted).

[33] *State v. Elnicki, supra* note 29.

[34] *Id.* at 57, 105 P.3d at 1229.

[35] *State v. Elnicki, supra* note 29.

[36] *State v. Demery*, 144 Wash. 2d 753, 30 P.3d 1278 (2001).

[37] See, also, *State v. Cordova, supra* note 30 (explaining holding in *State v. Demery, supra* note 36); *Lanham v. Com., supra* note 30 (explaining holding in *State v. Demery, supra* note 36).

I see no distinction between the two. It matters not whether the opinion was rendered in the context of an interrogation interview or in context of direct testimony in open court. The end result is the same: The jury hears the officer's opinion.[38]

Other courts have concluded that credibility statements by law enforcement in a recorded interview are generally admissible or are admissible in certain circumstances to provide context to the defendant's answers.[39] In *State v. O'Brien*,[40] the Supreme Court of Missouri concluded that a police officer's in-court testimony that he told the defendant in the interrogation that the officer thought the defendant was lying was not error. The court reasoned that "[t]he witness was not telling the jury that, in his opinion, the defendant is a liar. Rather, the witness was describing the give-and-take of his interrogation of" the defendant.[41]

Similarly, in *State v. Cordova*,[42] the Court of Appeals of Idaho considered whether the trial court erred in admitting a videotaped interview in which police stated that the victim was telling the truth and that the defendant was lying. In the video, one of the officers told the defendant that the officer was trained in detecting deception and could tell that the defendant was lying.[43] After reviewing case law from various jurisdictions on this issue, the court determined that

---

[38] *State v. Demery, supra* note 36, 144 Wash. 2d at 767, 30 P.3d at 1286 (Sanders, J., dissenting).

[39] *U.S. v. Finley*, 477 F.3d 250 (5th Cir. 2007), *abrogated on other grounds, Riley v. California*, ___ U.S. ___, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014); *State v. Boggs*, 218 Ariz. 325, 185 P.3d 111 (2008); *Lanham v. Com., supra* note 30; *State v. Castaneda*, 215 N.C. App. 144, 715 S.E.2d 290 (2011); *State v. Gaudreau, supra* note 30; *State v. Miller*, 341 Wis. 2d 737, 816 N.W.2d 331 (Wis. App. 2012).

[40] *State v. O'Brien*, 857 S.W.2d 212 (Mo. 1993).

[41] *Id.* at 221.

[42] *State v. Cordova, supra* note 30.

[43] *Id.*

the officer's comments that he was an expert in deception detection were not necessary to give context to the defendant's answers.[44] The court concluded that the officer's comments could have been easily redacted without harming the context of the defendant's later admissions. However, the court concluded that the officer's comments that the defendant was lying were admissible for the purpose of providing context to the defendant's inculpatory answers, but not as substantive evidence.[45] The court also concluded that the trial court's denial of the defendant's request for a limiting instruction was error, but concluded that the error in the trial was not prejudicial.[46]

Finally, the approach taken by the Supreme Court of Michigan in *People v. Musser*[47] was to decline to adopt a bright-line rule, but instead to analyze such statements under Michigan's existing rules of evidence. A detective's lengthy statements about the credibility of the victim were included in a recorded interview played for the jury.[48] The court first considered whether the statements violated the hearsay rule.[49] It concluded that the statements were not hearsay because they were not offered, and could not be offered, for the truth of the matter asserted (i.e., to prove that, in fact, the victim was telling the truth or the defendant was lying in the interview).[50]

Because the statements were not hearsay offered for their truth, but were offered for the separate purpose of "plac[ing] the defendant's statements in context for the jury," the court focused on the precise issue in the case:

---

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *People v. Musser*, 494 Mich. 337, 835 N.W.2d 319 (2013).

[48] *Id.*

[49] *Id.*

[50] *Id.*

whether the rule precluding a witness from commenting on another person's credibility at trial is triggered by an interrogator's statements that are offered to provide context to a defendant's statements, rather than offered to prove the truth of the matter asserted, or whether the interrogator's statements that actually provide context to a defendant's statements have some probative value, unlike statements commenting on the credibility of another person that are offered for their truth.[51]

The court reviewed case law from other courts on this issue, noting that "other jurisdictions have come to divergent conclusions."[52]

[11] The conclusion reached by the court was that under the facts of the case, it was not necessary to adopt a bright-line rule prohibiting such statements, but, instead, the court would analyze the statements under the existing rules of evidence.[53] The court held that

where the proponent of the evidence offers an interrogator's out-of-court statements that comment on a person's credibility for the purpose of providing context to a defendant's statements, the interrogator's statements are only admissible to the extent that the proponent of the evidence establishes that the interrogator's statements are relevant to their proffered purpose.[54]

To show the statements to be relevant and admissible, the court explained, the prosecution must do more than offer "a mechanical recitation . . . that an interrogator's statements are necessary to provide 'context' for a defendant's responses without explaining how the statements relate to the recited purpose."[55] Rather, the trial court must analyze

---

[51] *Id.* at 351, 835 N.W.2d at 328-29.

[52] *Id.* at 351, 835 N.W.2d at 329.

[53] *People v. Musser, supra* note 47.

[54] *Id.* at 353-54, 835 N.W.2d at 330.

[55] *Id.* at 354-55, 835 N.W.2d at 330.

whether the statements are both material and probative. The court explained:

> Under these inquiries, if an interrogator's out-of-court statement is offered to provide context to a defendant's statement that is not "in issue," it follows that both the interrogator's and the defendant's statements are immaterial and, thus, not relevant. . . . Likewise, the interrogator's out-of-court statements or questions have no probative value if those statements or questions, when considered in relationship to a defendant's statements, do not actually provide context to the defendant's statements. . . . Accordingly, an interrogator's out-of-court statements must be redacted if that can be done without harming the probative value of a defendant's statements.[56]

Even if a statement is relevant, the court said, it may be excluded under Michigan's rule 403 if its "'probative value is substantially outweighed by the danger of unfair prejudice'" or other considerations.[57] Thus, trial courts must weigh the probative value of the statements in recorded interviews by law enforcement in providing context to a defendant's statements and the resulting prejudice to a defendant.[58] The court said that trial courts must give special consideration to the risk that juries may have a difficult time limiting consideration of the statements to their proper purpose and may give undue weight to the statements of a law enforcement officer.[59] Finally, the court said that when admitting such evidence, trial courts should give limiting instructions to the jury about the proper use of the evidence.[60]

The court concluded that the majority of the statements of the detective were not probative to provide context to

---

[56] *Id.* at 355-56, 835 N.W.2d at 331.

[57] *Id.* at 356 n.15, 835 N.W.2d at 331 n.15 (quoting Mich. R. Evid. 403).

[58] *People v. Musser, supra* note 47.

[59] *Id.*

[60] *Id.*

the defendant's statements.[61] It determined that the limiting instruction given after the recording was played was insufficient, reversed the trial court's judgment, and remanded the cause for a new trial.[62]

We find the approach of the Michigan Supreme Court in *Musser*[63] to be the most persuasive. A rule that would render categorically inadmissible all statements by law enforcement in a recorded interview that happened to implicate the defendant's credibility would run the risk of excluding important and necessary context to the defendant's admissible responses. On the other hand, a rule that categorically allowed all such statements to be admitted would run the risk of allowing the admission of irrelevant and potentially unfair prejudicial statements. The approach articulated in *Musser* avoids both of these pitfalls. It also has the added virtue of not creating any new evidentiary rules, but, rather, analyzing these types of statements within the framework of the existing rules of evidence.

[12] We hold that statements by law enforcement officials on the veracity of the defendant or other witnesses, made within a recorded interview played for the jury at trial, are to be analyzed under the ordinary rules of evidence. Such commentary is not admissible to prove the truth of the matter asserted in the commentary. But it may be independently admissible for the purpose of providing necessary context to a defendant's statements in the interview which are themselves admissible. The police commentary must be probative and material in light of that permissible purpose of providing context to the defendant's responses.[64] And even statements that are otherwise admissible may be excluded under rule 403.[65]

---

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] See §§ 27-401 and 27-402.

[65] § 27-403.

Upon request, a defendant is entitled to a limiting instruction that such statements are to be considered only for the permissible purpose of providing context to the defendant's statements in the interview.[66]

[13] To be relevant, evidence must be probative and material.[67] Evidence is probative if it has any tendency to make the existence of a fact more or less probable than it would be without the evidence.[68] A fact is material if it is of consequence to the determination of the case.[69]

To determine whether a statement by a law enforcement official in a recorded interview is relevant for the purpose of providing context to a defendant's statement, we first consider whether the defendant's statement itself is relevant, whether it makes a material fact more or less probable. If the defendant's statement is itself relevant, then we must consider whether the law enforcement statement is relevant to provide context to the defendant's statement. To do this, we consider whether the defendant's statement would be any less probative in the absence of the law enforcement statement. If the law enforcement statement does not make the defendant's statement any more probative, it is not relevant. To be clear, by allowing admission, under certain circumstances, of law enforcement statements in recorded interviews that comment on the veracity of the defendant, we are not opening a "back door" to allow the admission of improper opinion testimony by simply labeling it as "context." Trial courts have a serious responsibility to ensure that statements are relevant for the permissible purpose of providing necessary context to a defendant's statements or that such statements do not run afoul of rule 403.

---

[66] Neb. Evid. R. 105, Neb. Rev. Stat. § 27-105 (Reissue 2016).

[67] § 27-401.

[68] See *id.*

[69] See *id.*

Finally, we note that nothing about our holding today should be read to effect the operation of the rule of completeness, under which a party is entitled to admit the entirety of an act, declaration, conversation, or writing when the other party admits a part and when the entirety is "necessary to make it fully understood."[70]

### (c) Application

Under our deferential abuse of discretion standard of review, and in light of the limiting instructions given, we conclude that the district court's admission of Howton's statements did not rise to the level of an abuse of discretion.

### (i) Relevance

Howton's statements about Rocha's honesty or possession of the methamphetamine have minimal probative value for the only permissible purpose for which they could be admitted: to provide context for Rocha's statements. They would not be admitted to prove that Rocha was, in fact, being dishonest or guilty of knowingly possessing methamphetamine, which would invade the province of the jury.

First, we must consider whether Rocha's statements were relevant. Many of Rocha's statements were denials of ownership of the drugs or denials that he was being dishonest. Rocha's statements are relevant to the issue of whether he knowingly possessed the methamphetamine. But the relevance of Rocha's statements does not automatically render Howton's statements relevant or admissible.

Next, we must consider whether Howton's statements were relevant for the limited purpose of providing context to Rocha's statements. We consider whether Rocha's statements would be any less probative of a material fact in issue in the absence of Howton's statements. If Rocha's admissible

---

[70] Neb. Evid. R. 106(1), Neb. Rev. Stat. § 27-106(1) (Reissue 2016). See, also, *State v. Thompson*, 244 Neb. 375, 507 N.W.2d 253 (1993); *State v. Schrein*, 244 Neb. 136, 504 N.W.2d 827 (1993).

statements are no less probative in the absence of Howton's statements' context (as compared to Rocha's statements with Howton's statements' context), then Howton's statements are not relevant. If Howton's statements have any probative value for the purpose of providing context to Rocha's statements, it is minimal.

### (ii) Rule 403

Even relevant evidence is not automatically admissible. It must pass muster under rule 403. The probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

[14,15] The risk of unfair prejudice is heightened when the statements are made by a law enforcement officer.[71] In *State v. Gonzales*, we stated:

> [W]hen a prosecutor asserts his or her personal opinions, the jury might be persuaded by a perception that counsel's opinions are correct because of his position as prosecutor, rather than being persuaded by the evidence. The prosecutor's opinion carries with it the imprimatur of the government and may induce the jury to trust the government's judgment rather than its own view of the evidence.[72]

Similarly, the opinion of a law enforcement officer carries with it the "imprimatur of the government" and can induce improper reliance by a jury. Admitting statements by a law enforcement officer calling into question a defendant's honesty and stating conclusions about a defendant's guilt carries with it a risk of unfair prejudice. The risk of unfair prejudice in the instant case is that the jury could have been influenced, based on Howton's statements, into believing that Rocha did knowingly possess the methamphetamine and that he was lying

---

[71] Cf. *State v. Gonzales, supra* note 26.

[72] *Id.* at 646, 884 N.W.2d at 117-18. See, also, *People v. Musser, supra* note 47; *State v. Demery, supra* note 36 (Sanders, J., dissenting).

when he denied it, even though the statements were not admissible for that purpose.

But in considering the risk of unfair prejudice in a rule 403 analysis, we also consider the effect of limiting instructions given by the trial court. In this case, the district court instructed the jury that Howton's statements were "part of interview techniques and should not be considered as substantive evidence in any way in determining if . . . Rocha [was in] possession of the alleged controlled substance, nor should they be given any weight when considering the truthfulness of any statements made by . . . Rocha." Not only was this unambiguous instruction given, but it was given twice: once immediately before the video was shown to the jury and a second time with the other jury instructions. This instruction made clear to the jurors that they were not to consider Howton's statements for determining Rocha's guilt. It also explained that Howton's statements were merely an interview technique, making it less likely that the jurors would improperly rely on the statements based on Howton's aura of reliability as a law enforcement officer. While a limiting instruction or an instruction to disregard does not automatically eliminate any risk of unfair prejudice, it did mitigate the risk in this case.

### (iii) Abuse of Discretion

While this is a close call, we cannot say, under our deferential standard of review, that it was an abuse of discretion for the district court to admit Howton's statements under a relevance and rule 403 analysis. These statements had minimal probative value, at best. And statements made by law enforcement carry a special risk of unfair prejudice because they carry the imprimatur of the government. But the limiting instruction twice given by the court reduced the risk of unfair prejudice from this evidence. While this case approaches the line and is fact specific, we do not conclude that the district court abused its discretion.

The State correctly points out that "there is nothing improper with the interrogation techniques in question."[73] We do not question the propriety of the interview technique used by Howton. Nor do we believe that Howton was doing anything but proper police work. But the propriety of an interview technique does not render the interrogator's statements automatically admissible in a court of law.[74] Our discussion here relates only to the admissibility of evidence, not the propriety of Howton's actions.

### 3. Denial of Motion to Suppress: Search of Vehicle

Rocha argues that the warrantless search of the vehicle violated his right to be free from unreasonable searches and seizures under the U.S. and Nebraska Constitutions. He argues that the district court erred in denying his motion to suppress the evidence found in the search of the vehicle.

### (a) Standard of Review

[16,17] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review.[75] Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.[76] When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearings on the motion to suppress.[77]

---

[73] Brief for appellee at 14.

[74] See *State v. Elnicki, supra* note 29.

[75] *State v. Rothenberger, supra* note 4.

[76] *Id.*

[77] *Id.*

The ultimate determination of probable cause to perform a warrantless search is reviewed de novo, and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge.[78]

#### (b) Right Against Unreasonable
#### Searches and Seizures

This court typically construes the enumerated rights in the Nebraska Constitution consistently with their counterparts in the U.S. Constitution as construed by the U.S. Supreme Court,[79] and we do so today.

[18,19] The ultimate touchstone of the Fourth Amendment, and article I, § 7, of the Nebraska Constitution, is reasonableness.[80] Searches and seizures must not be unreasonable. Searches without a valid warrant are per se unreasonable, subject only to a few specifically established and well-delineated exceptions.[81]

[20] Among the exceptions to the warrant requirement are searches incident to a lawful arrest[82] and the "automobile exception."[83] Rocha argues that the warrantless search of his vehicle does not fall within either the search incident to lawful arrest exception or the automobile exception. The State focuses on the automobile exception, arguing that it does apply, but does not address the search incident to lawful arrest exception. As did the district court, we conclude that the

---

[78] *State v. Dalland*, 287 Neb. 231, 842 N.W.2d 92 (2014).

[79] See, e.g., *State v. Erpelding*, 292 Neb. 351, 874 N.W.2d 265 (2015); *State v. Simnick*, 279 Neb. 499, 779 N.W.2d 335 (2010); *State v. Havlat*, 222 Neb. 554, 385 N.W.2d 436 (1986). But see *State v. Havlat, supra* note 79 (Shanahan, J., dissenting).

[80] See *Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016). See, also, *State v. Rothenberger, supra* note 4.

[81] *Arizona v. Gant, supra* note 3.

[82] *Id.*

[83] *California v. Carney*, 471 U.S. 386, 390, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985).

search was justified under the automobile exception. We do not consider whether the search could have been justified as a search incident to lawful arrest.

### (c) Automobile Exception

The automobile exception to the warrant requirement was first articulated by the U.S. Supreme Court in 1925 in the case *Carroll v. United States*.[84] Therein, the Court considered whether a warrantless search of an automobile, found to be smuggling illegal whisky and gin during the Prohibition Era, violated the Fourth Amendment.[85] While this was the first case to articulate the automobile exception, the Court noted that the First Congress—the same Congress that proposed the adoption of the Fourth Amendment—drew a distinction in law between searches of homes and searches of ships or movable vessels, with the latter not requiring a warrant.[86]

The Court held:

> [I]f the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid.[87]

A key rationale for the Court's holding was that in "a search of a ship, motor boat, wagon or automobile, for contraband goods, . . . it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."[88] The mobility

---

[84] *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925).

[85] *Id.*

[86] *Id.*

[87] *Id.*, 267 U.S. at 149.

[88] *Id.*, 267 U.S. at 153.

of automobiles continued to be the primary rationale behind the automobile exception.[89]

Rocha relies on *Coolidge v. New Hampshire*[90] in claiming that the search of his vehicle was not within the automobile exception. Therein, the Court stated the rule that "a search or seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.'"[91] The Court examined the rationale for the automobile exception provided in *Carroll*, the mobility of automobiles and the risk that "'the car's contents may never be found again if a warrant must be obtained.'"[92] The Court concluded that the application of the automobile exception could not be justified under the facts of the case because "[t]here was no way in which [the defendant] could conceivably have gained access to the automobile after the police arrived on his property."[93]

Soon after *Coolidge* was decided, the Court distinguished the decision in *Cardwell v. Lewis*.[94] The Court said that because in *Coolidge*, the car "was parked on the defendant's driveway, the seizure of that automobile required an entry upon private property."[95] It distinguished these facts from the facts of its case, in which "the automobile was seized from a public place where access was not meaningfully restricted."[96]

---

[89] See, e.g., *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982); *Chambers v. Maroney*, 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970).

[90] *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971).

[91] *Id.*, 403 U.S. at 474-75 (emphasis omitted).

[92] *Id.*, 403 U.S. at 460.

[93] *Id.*

[94] *Cardwell v. Lewis*, 417 U.S. 583, 94 S. Ct. 2464, 41 L. Ed. 2d 325 (1974).

[95] *Id.*, 417 U.S. at 593.

[96] *Id.*

These early U.S. Supreme Court cases discussing the automobile exception relied primarily on the rationale of the mobility of automobiles and the risk that they might be driven away before a search could be conducted. But later cases articulated an additional rationale: the reasonable expectation of privacy in an automobile is less than in one's home.[97] Thus,

> [e]ven in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception. . . .
>
> These reduced expectations of privacy derive . . . from the pervasive regulation of vehicles capable of traveling on the public highways.[98]

As the additional rationale for the automobile exception developed, the exception became more categorical and less dependent on the likelihood in each case that the automobile might be driven away. In *Michigan v. Thomas*,[99] the Court said:

> It is thus clear that the justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant.

---

[97] *Pennsylvania v. Labron*, 518 U.S. 938, 116 S. Ct. 2485, 135 L. Ed. 2d 1031 (1996); *California v. Carney, supra* note 83; *South Dakota v. Opperman*, 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976); *Cardwell v. Lewis, supra* note 94.

[98] *California v. Carney, supra* note 83, 471 U.S. at 391-92.

[99] *Michigan v. Thomas*, 458 U.S. 259, 261, 102 S. Ct. 3079, 73 L. Ed. 2d 750 (1982). See, also, *California v. Carney, supra* note 83.

The Court has made clear that if probable cause and ready mobility are present, no additional showing of exigent circumstances is required.[100]

Rocha argues that exigent circumstances are still a viable requirement of the automobile exception. He relies on our decision in *State v.* Neely,[101] wherein we stated, relying on *Coolidge*[102] and other U.S. Supreme Court cases, that the automobile exception requires probable cause and exigent circumstances consisting of "the mobility of the automobile and the possibility that the suspect may take himself and the evidence in the vehicle out of the jurisdiction before a warrant can be obtained." We found that the warrantless search in that case was not within the automobile exception because there was no possibility the defendant could have moved the vehicle when it was stored at the police station and there were no circumstances preventing police from obtaining a warrant prior to searching the vehicle.[103]

Rocha attempts to distinguish *Maryland v. Dyson*,[104] in which the Court stated that there is no separate exigency requirement for the automobile exception so long as the vehicle is readily mobile and there is probable cause. In *State v. Alarcon-Chavez*,[105] we stated that the requirements of the automobile exception are probable cause and ready mobility of the vehicle. Rocha claims the ready mobility requirement is an exigent circumstance.

---

[100] *Maryland v. Dyson*, 527 U.S. 465, 119 S. Ct. 2013, 144 L. Ed. 2d 442 (1999).

[101] *State v. Neely*, 236 Neb. 527, 536, 462 N.W.2d 105, 110 (1990).

[102] See *Coolidge v. New Hampshire, supra* note 90.

[103] *State v. Neely, supra* note 101.

[104] *Maryland v. Dyson, supra* note 100.

[105] *State v. Alarcon-Chavez*, 284 Neb. 322, 821 N.W.2d 359 (2012).

Rocha also cites cases[106] from other states which have continued to use the "two part requirement"[107] for the automobile exception even after *Dyson*. Some of these cases have adopted stricter requirements for the automobile exception under state law, continuing to require a showing of exigent circumstances. In some of these cases, exigent circumstances have been held to mean the vehicle was readily mobile and that "'it was not practicable under the circumstances to obtain a warrant.'"[108] But other jurisdictions have been entirely consistent with the test in *Dyson* and have required only ready mobility and probable cause. There is no additional requirement of the impracticability of obtaining a warrant.[109]

To the extent that Rocha argues that the "exigent circumstance"[110] of a readily mobile vehicle and probable cause are the requirements of the automobile exception, we agree. To the extent that Rocha argues that any *additional* showing of exigent circumstances is required, such as a showing that it was impracticable for the police to obtain a warrant under the circumstances, we disagree.

Rocha's argument seems to be premised on a very narrow application of the ready mobility requirement. He argues that

---

[106] *State v. Wallace*, 80 Haw. 382, 910 P.2d 695 (1996); *State v. Conn*, 278 Kan. 387, 99 P.3d 1108 (2004); *State v. Elison*, 302 Mont. 228, 14 P.3d 456 (2000); *State v. Cooke*, 163 N.J. 657, 751 A.2d 92 (2000), *abrogated, State v. Witt*, 223 N.J. 409, 126 A.3d 850 (2015); *State v. Gomez*, 122 N.M. 777, 932 P.2d 1 (1997); *State v. Zwicke*, 767 N.W.2d 869 (N.D. 2009); *State v. Anderson*, 910 P.2d 1229 (Utah 1996); *State v. Bauder*, 181 Vt. 392, 924 A.2d 38 (2007); *State v. Tibbles*, 169 Wash. 2d 364, 236 P.3d 885 (2010).

[107] Brief for appellant at 39.

[108] *State v. Elison, supra* note 106, 302 Mont. at 244, 14 P.3d at 468. See, also, *State v. Bauder, supra* note 106; *State v. Tibbles, supra* note 106.

[109] See, *State v. Conn, supra* note 106; *State v. Howard*, 51 Kan. App. 2d 28, 339 P.3d 809 (2014) (citing *Maryland v. Dyson, supra* note 100); *State v. Zwicke, supra* note 106.

[110] Brief for appellant at 38.

"because [Rocha] was incapable of moving the [vehicle] or destroying evidence, officers should have obtained a warrant before searching the vehicle."[111] This argument focuses on Rocha's practical ability to move the vehicle in light of his arrest rather than on the inherent mobility of the vehicle as a functioning automobile.

Recently in *Alarcon-Chavez*, we analyzed the ready mobility requirement, concluding that "[t]he vehicle was operational and therefore readily movable" even though the defendant had already been arrested and presumably did not have access to the vehicle.[112]

Other state and federal courts have considered the ready mobility requirement and have generally focused the inquiry on the inherent mobility of the vehicle rather than whether the defendant or others actually had the ability to move the vehicle at the time of the search.[113] The 11th Circuit has said, "All that is necessary to satisfy th[e] element [of ready mobility] is that the automobile is operational."[114] In another case, the Second Circuit rejected an argument that the defendant's vehicle was not readily mobile, because the defendant had been taken away from the vehicle to the police station. The court said:

> Whether a vehicle is "readily mobile" within the meaning of the automobile exception has more to do with the inherent mobility of the vehicle than with the potential for the vehicle to be moved from the jurisdiction, thereby precluding a search. . . . The district court's reading of "ready mobility" is in error because the district court appeared to regard the actual ability of a driver or

---

[111] *Id.*

[112] *State v. Alarcon-Chavez, supra* note 105, 284 Neb. at 334, 821 N.W.2d at 368.

[113] See, *Warrantless Searches and Seizures*, 45 Geo. L.J. Ann. Rev. Crim. Proc. 49 (2016); 79 C.J.S. *Searches* § 113 (2006).

[114] *U.S. v. Watts*, 329 F.3d 1282, 1286 (11th Cir. 2003).

passenger to flee immediately in the car, or the likelihood of hi[s] or her doing so, as a requirement for the application of the automobile exception.[115]

Relying on a case involving a warrantless search of a truck that was stuck in a ditch, the 10th Circuit said that the ready mobility inquiry does not focus on "'factual controversies regarding the degree to which a vehicle is or is not readily mobile, or whether its mobility has been or could be obstructed by the police.'"[116] The court noted that in the case cited, the truck was readily mobile because it "had not lost its *inherent* mobility" and because "[t]here was 'no evidence of permanent immobility.'"[117]

[21,22] Similarly, the Eighth Circuit has noted that "[i]t is the characteristic mobility of all automobiles, not the relative mobility of the car in a given case," that justifies the automobile exception.[118] The Eighth Circuit has also said that the test for ready mobility is whether the vehicle is "'readily capable' of 'being used on the highways'" and is "'stationary in a place not regularly used for residential purposes.'"[119]

Like federal courts, state courts have generally adopted a broad reading of the ready mobility requirement. The Supreme Court of Indiana has said:

In light of the Supreme Court's recent emphatic statement in *Dyson*[120] that the automobile exception "does not have a separate exigency requirement," . . . we conclude that this exception to the warrant requirement under the Fourth Amendment does not require any additional

---

[115] *U.S. v. Howard*, 489 F.3d 484, 493 (2d Cir. 2007).

[116] *U.S. v. Mercado*, 307 F.3d 1226, 1229 (10th Cir. 2002).

[117] *Id.* (emphasis in original).

[118] *U.S. v. Perry*, 925 F.2d 1077, 1080 n.4 (8th Cir. 1991). See, also, *United States v. Hepperle*, 810 F.2d 836 (8th Cir. 1987).

[119] *U.S. v. Holleman*, 743 F.3d 1152, 1158 (8th Cir. 2014) (quoting *California v. Carney, supra* note 83).

[120] *Maryland v. Dyson, supra* note 100.

consideration of the likelihood, under the circumstances, of a vehicle being driven away. Rather, we understand the "ready mobility" requirement of the automobile exception to mean that all operational, or potentially operational, motor vehicles are inherently mobile, and thus a vehicle that is temporarily in police control or otherwise confined is generally considered to be readily mobile and subject to the automobile exception to the warrant requirement if probable cause is present. This broad understanding of "readily mobile" is also consistent with the recognition that, for Fourth Amendment purposes, an individual is deemed to have a reduced expectation of privacy in an automobile.[121]

The Supreme Court of Kentucky rejected the argument that "the ready mobility element is an exigency requirement that cannot be met when a defendant is already arrested."[122] The court instead concluded that "[r]eady mobility refers to the capability of using an automobile on the highways, not the probability that it will be used to do so," and that "a search of an automobile 'is proper even if the occupants or owners are taken into custody.'"[123] The Iowa Supreme Court has held that "sufficient exigency exists to justify a warrantless search of a readily mobile vehicle even after the vehicle has been impounded and removed to another location."[124]

The U.S. Supreme Court has appeared to adopt a broad reading of the ready mobility requirement. In *Thomas*, the Court said the justification for a warrantless search "does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven

---

[121] *Myers v. State*, 839 N.E.2d 1146, 1152 (Ind. 2005) (citing *Pennsylvania v. Labron, supra* note 97). Accord *California v. Carney, supra* note 83.

[122] *Chavies v. Com.*, 354 S.W.3d 103, 111 (Ky. 2011).

[123] *Id.*

[124] *State v. Allensworth*, 748 N.W.2d 789, 797 (Iowa 2008).

away . . . during the period required for the police to obtain a warrant."[125] In *Pennsylvania v. Labron*,[126] the Court likewise held that the automobile exception applied even where the defendant had already been arrested when the search occurred and, thus, presumably did not pose any risk of moving his vehicle.

[23] In light of the overwhelming weight of authorities, we hold that the requirement of ready mobility for the automobile exception is met whenever a vehicle that is not located on private property is capable or apparently capable of being driven on the roads or highways. This inquiry does not focus on the likelihood of the vehicle's being moved under the particular circumstances and is generally satisfied by the inherent mobility of all operational vehicles. It does not depend on whether the defendant has access to the vehicle at the time of the search or is in custody, nor on whether the vehicle has been impounded. The purpose of the ready mobility requirement is to distinguish vehicles on public property from fixed, permanent structures, in which there is a greater reasonable expectation of privacy.

### (d) Application

[24,25] In this case, the automobile exception clearly justifies the search of the vehicle which Rocha was driving. As the district court correctly concluded, Howton had probable cause to search the vehicle. Probable cause is a flexible, commonsense standard that depends on the totality of the circumstances.[127] Probable cause to search requires that the known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that contraband or evidence of a crime will be found.[128] The totality of the facts,

---

[125] *Michigan v. Thomas, supra* note 99, 458 U.S. at 261.

[126] *Pennsylvania v. Labron, supra* note 97.

[127] *State v. Dalland, supra* note 78.

[128] *Id.*

including Rocha's "nervous" behavior, the residue found in Rocha's sweatshirt that appeared to be marijuana, and the suspected marijuana, drug paraphernalia, and digital scale found in Trejo's purse, provided the necessary probable cause for Howton to search the vehicle.

Additionally, the vehicle unquestionably was readily mobile, because Rocha had just driven it and it was not located on private property. Because the vehicle was readily mobile and because there was probable cause to search the vehicle, the search was permissible under the automobile exception and did not violate the U.S. and Nebraska Constitutions' prohibitions against unreasonable searches and seizures.

### 4. Overruling of Objection and Motion for Mistrial: Questioning by Prosecution Regarding Lack of DNA and Fingerprint Testing of Evidence by Defense

Rocha argues that the district court erred in overruling his objection to questioning of Howton by the prosecution during the trial as to whether anyone besides the Scottsbluff Police Department had done any DNA and fingerprint testing of the evidence. The question and answer occurred on redirect examination after the defense elicited on cross-examination that Howton had not requested DNA and fingerprint testing on the evidence found in the vehicle. The question and answer appear to allude to the fact that Rocha had not done his own independent testing of the evidence to show that his fingerprints and DNA were not on the items containing methamphetamine. After Rocha's objection was overruled, he made a motion for mistrial, which the court denied. He argues that the questioning impermissibly switched the burden of proof.

### (a) Standard of Review

[26,27] Whether to grant a motion for mistrial is within the trial court's discretion, and this court will not disturb its

ruling unless the court abused its discretion.[129] A mistrial is properly granted in a criminal case where an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.[130]

### (b) Burden of Proof in Criminal Cases

[28] Under the Due Process Clause of the 14th Amendment to the U.S. Constitution and under the Nebraska Constitution, in a criminal prosecution, the State must prove every ingredient of an offense beyond a reasonable doubt and may not shift the burden of proof to the defendant by presuming an ingredient upon proof of the other elements of the offense.[131]

Because the burden of proof always remains with the State, it cannot comment on a defendant's failure to produce evidence to refute an element of the crime, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence.[132] The exception to this rule is when the defendant voluntarily assumes some burden of proof by asserting the defenses of alibi, of self-defense, and of others, relying on facts that could be elicited only from a witness who is not equally available to the State.[133]

The Supreme Court of Florida faced a similar situation in *Hayes v. State*.[134] In that case, the defense brought out on direct examination that the State had never requested testing of certain bloodstains.[135] On redirect examination, the trial judge

---

[129] *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

[130] *Id.*

[131] *Patterson v. New York*, 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977). See *State v. Hinrichsen*, 292 Neb. 611, 877 N.W.2d 211 (2016).

[132] See *Jackson v. State*, 575 So. 2d 181 (Fla. 1991).

[133] *Id.*

[134] *Hayes v. State*, 660 So. 2d 257 (Fla. 1995).

[135] *Id.*

allowed the State, over an objection, to inquire as to whether the defense had requested its own testing of the bloodstains, which it had not.[136] The court found that the question and answer were improper and prejudicial because they may have led the jury to believe the defendant had an obligation to test the evidence in order to prove his innocence.[137]

We reject the State's argument that Rocha "opened the door" to the questioning of Howton about Rocha's failure to conduct his own DNA and fingerprint testing. While a defendant may invite the State to explain why it chose not to submit certain items for testing, "a defendant in a criminal case can never 'open the door' to shift the burden of proof."[138] A defendant is entitled to inquire about weaknesses in the State's case, but this does not open the door for the State to point out that the defendant has not proved his or her innocence.

This case is akin to *Hayes*.[139] The prosecution's question and Howton's answer had the risk of misleading the jury into thinking that Rocha had an obligation to prove that his fingerprints and DNA were not on the vials containing methamphetamine. Rocha did not open the door to this questioning by raising the State's failure to conduct such testing. The prosecution properly elicited testimony from Howton why he did not have the evidence tested for DNA and fingerprints, but it went too far when it asked about whether "anyone else" (i.e., Rocha) had it tested.

[29] However, the district court did not abuse its discretion by denying Rocha's motion for a mistrial as a result of the prosecution's questioning. The court instructed the jury to disregard the testimony in its entirety and made clear to the jury that "Rocha has pleaded not guilty and is presumed to

---

[136] *Id.*

[137] *Id.*

[138] *People v. Beasley*, 384 Ill. App. 3d 1039, 1048, 893 N.E.2d 1032, 1040, 323 Ill. Dec. 558, 566 (2008).

[139] *Hayes v. State, supra* note 134.

be innocent" and that "[t]he State's burden to prove each element of a crime charged never shifts to a defendant." Absent evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict.[140] Under our abuse of discretion standard of review, we conclude that the questioning and testimony, in light of the jury instructions, did not deprive Rocha of a fair trial.

### 5. DENIAL OF REQUEST FOR JURY INSTRUCTION: LESSER-INCLUDED OFFENSE

Rocha argues that the district court erred in denying his request to instruct the jury on the lesser-included offense of *attempted* possession of a controlled substance. The district court denied the request, because it "didn't think the evidence warranted a lesser included attempt in this particular case."

### (a) Standard of Review

[30] Whether the jury instructions given by a trial court are correct is a question of law.[141] When reviewing questions of law, an appellate court resolves the questions independently of the conclusion reached by the lower court.[142]

### (b) Jury Instructions: Lesser-Included Offenses

[31] A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense.[143]

---

[140] *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016).

[141] *State v. Rothenberger, supra* note 4.

[142] *Id.*

[143] *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008).

[32-34] To determine whether one statutory offense is a lesser-included offense of the greater, we look to the elements of the crime and not to the facts of the case.[144] The test for determining whether a crime is a lesser-included offense is whether the offense in question cannot be committed without committing the lesser offense.[145] Where a crime is capable of being attempted, an attempt to commit such a crime is a lesser-included offense of the crime charged.[146] Every completed crime necessarily includes an attempt to commit it.[147]

A person shall be guilty of an attempt to commit a crime if he or she:

. . . .

(b) Intentionally engages in conduct which, under the circumstances as he or she believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his or her commission of the crime.[148]

Conduct is not to be considered a substantial step unless it is strongly corroborative of the defendant's criminal intent.[149] Whether a defendant's conduct constitutes a substantial step toward the commission of a particular crime and is an attempt is generally a question of fact.[150]

[35,36] A person possesses a controlled substance when he or she knows of the nature or character of the substance and of its presence and has dominion or control over it.[151] Possession can be either actual or constructive, and constructive possession of an illegal substance may be proved by

---

[144] *Id.*

[145] *State v. James*, 265 Neb. 243, 655 N.W.2d 891 (2003).

[146] See *id.*

[147] *Id.*

[148] Neb. Rev. Stat. § 28-201(1) (Cum. Supp. 2014).

[149] § 28-201(3); *State v. Babbitt*, 277 Neb. 327, 762 N.W.2d 58 (2009).

[150] *Id.*

[151] *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011); NJI2d Crim. 4.2.

direct or circumstantial evidence.[152] To be guilty, the defendant must possess the controlled substance "knowingly or intentionally."[153]

[37] To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.[154]

The district court did not err by denying Rocha's request for a jury instruction on the lesser-included offense of attempted possession of a controlled substance, because the evidence did not produce a rational basis for acquitting him of the greater offense of possession but convicting him of the lesser offense of attempted possession.

Rocha argues that the facts could support a conviction of attempted possession but not actual possession. He correctly states that "[t]he issue at trial was whether [he] actually knew the [Wyoming canister] contained methamphetamine."[155] He argues that the jury could have found that because he took the Wyoming canister as collateral for a $700 loan, he may not have known, but merely suspected, that it contained methamphetamine and thus was engaging in a substantial step toward possessing a controlled substance.

As the criminal attempt statute makes clear, a person commits an attempted crime when he or she "[i]ntentionally engages in *conduct*" that "constitutes a substantial step" toward the completion of the crime.[156] Rocha's argument that the jury may have found that he suspected, but did not know, that the

---

[152] *State v. Howard, supra* note 151.

[153] Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2014).

[154] *State v. Armagost*, 291 Neb. 117, 864 N.W.2d 417 (2015).

[155] Brief for appellant at 47.

[156] § 28-201(1)(b) (emphasis supplied).

canister contained methamphetamine is an argument that his state of mind constituted a substantial step toward the necessary state of mind for the crime of possession (knowledge or intent). This argument confuses the "mens rea"[157] and "actus reus"[158] components of criminal law.

Rocha's knowledge whether the Wyoming canister contained methamphetamine was the primary issue at trial, because his knowledge was determinative of whether he "knowingly [and] intentionally"[159] possessed the controlled substance, the mens rea component of the crime. Whether he possessed the methamphetamine, the actus reus component, was not the primary issue, because it was undisputedly found in the vehicle over which he had control.

To be guilty of an attempt, a person must *intentionally* engage in conduct constituting a substantial step toward the completion of the underlying crime. An attempted crime involves intent, the mens rea, and conduct that is a substantial step toward the completed crime, the actus reus. But if Rocha had the intent to possess or the intent to attempt to possess the methamphetamine, then he would be guilty of actual possession, not just attempted possession, because the methamphetamine was under his control. The facts in this case do not support the conclusion that Rocha could be guilty of attempted possession but not possession.

Because an instruction as to attempted possession of a controlled substance was not warranted under the facts in

---

[157] Black's Law Dictionary 1134 (10th ed. 2014) (defining term as "[t]he state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime").

[158] *Id.* at 44 (defining term as "[t]he wrongful deed that comprises the physical components of a crime and that generally must be coupled with mens rea to establish criminal liability" and "[t]he voluntary act or omission, the attendant circumstances, and the social harm caused by a criminal act, all of which make up the physical components of a crime").

[159] See § 28-416(3).

this case, the district court did not err in denying Rocha's requested instruction.

## V. CONCLUSION

Because there was insufficient evidence to show when Rocha's driver's license was suspended, we vacate his conviction for driving under suspension. We reject all of his other assignments of error, or find that they constitute harmless error. We affirm the judgment of the district court in all other respects.

AFFIRMED IN PART, AND IN PART VACATED.

HEAVICAN, C.J., not participating.