Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/18/2017 08:11 AM CDT

State of Nebraska, appellee, v.
Alicia R. Campbell, appellant.
___ N.W.2d ___

Filed July 11, 2017.    No. A-16-836.

1. **Evidence: Appeal and Error.** In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.

2. ____: ____. In reviewing a sufficiency of the evidence claim, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

3. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

4. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

5. **Investigative Stops: Motor Vehicles: Probable Cause.** A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle.

6. **Constitutional Law: Investigative Stops: Motor Vehicles: Police Officers and Sheriffs.** Under Fourth Amendment case law, it is reasonable for an officer to request that a driver sit in the patrol car during a traffic stop.

7. ____: ____: ____: ____. Once a motor vehicle has been lawfully detained for a traffic violation, the police officer may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.

8. **Investigative Stops: Motor Vehicles: Police Officers and Sheriffs.** It is reasonable and lawful for an officer, during a traffic stop, to request that a driver exit his or her vehicle.

9. **Controlled Substances.** A person possesses a controlled substance when he or she knows of the nature or character of the substance and of its presence and has dominion or control over it.

10. **Controlled Substances: Evidence: Circumstantial Evidence: Proof.** Possession can be either actual or constructive, and constructive possession of an illegal substance may be proved by direct or circumstantial evidence.

11. **Controlled Substances.** To be guilty of possession of a controlled substance, the defendant must possess the controlled substance knowingly or intentionally.

12. **Controlled Substances: Proof.** Mere presence at a place where a controlled substance is found is not sufficient to show constructive possession. Instead, the evidence must show facts and circumstances which affirmatively link the accused to the marijuana and paraphernalia so as to suggest that he or she knew of it and exercised control over it.

13. **Investigative Stops: Motor Vehicles.** The fact that one is the driver of a vehicle, particularly over a long period of time, creates an inference of control over items in the vehicle.

14. **Courts: Jurisdiction.** While it is not a constitutional prerequisite for jurisdiction, the existence of an actual case or controversy is necessary for the exercise of judicial power.

15. **Moot Question: Words and Phrases.** A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive.

16. **Convictions: Sentences: Moot Question: Appeal and Error.** An appeal from a criminal conviction is not moot, even though a sentence for a criminal conviction has been fully served, when the defendant is subjected to collateral consequences resulting from the criminal conviction.

Appeal from the District Court for Lancaster County: Andrew R. Jacobsen, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and Shawn Elliott for appellant.

Douglas J. Peterson, Attorney General, and Joe Meyer for appellee.

Moore, Chief Judge, and Pirtle and Bishop, Judges.

Pirtle, Judge.

## INTRODUCTION

Alicia R. Campbell appeals her convictions and sentences in the district court for Lancaster County for failure to obey a lawful order of the Nebraska State Patrol, possession of marijuana, and possession of drug paraphernalia. She challenges the sufficiency of the evidence for each offense and argues that her sentence for failure to obey a lawful order of the State Patrol is excessive. Based on the reasons that follow, we affirm.

## BACKGROUND

On August 27, 2015, Nebraska State Patrol Trooper Kyle Gress was assigned to the traffic division and was working a targeted patrol along Highway 2 near Lincoln, Nebraska. He was in a marked patrol car and was in uniform. His primary duty was enforcing traffic laws. Around 5 p.m., he noticed a vehicle that appeared to be speeding. The posted speed limit was 65 miles per hour, and Gress estimated the vehicle was traveling about 80 miles per hour. He used the radar device in his patrol car and confirmed that the vehicle was speeding at 79 miles per hour. He then initiated a traffic stop.

Gress testified that once the vehicle stopped, he approached it on the passenger side. He testified that he does this for safety reasons when making stops, because it keeps him away from the traffic side of the vehicle. As he approached the vehicle, he noticed that the windows had a dark tint and that the passenger-side window was partially open. Gress thought this was unusual because most people roll the window down all the way when he approaches a vehicle. There was an adult male in the front passenger seat, later identified as Devin James, and Campbell's 5-year-old daughter was in the back seat. Gress asked Campbell for her driver's license and registration.

Campbell gave Gress her driver's license and tried to locate her registration.

Almost immediately upon Gress' approaching the vehicle, James became involved and began talking over Campbell and Gress. James began video recording the stop on his cell phone by placing it at the window, which interfered with Gress' view of the driver. There was also a rescue unit in the area with its siren on, which made it difficult for Gress to communicate with Campbell. Gress testified that as a result of these circumstances, he was having difficulty hearing and seeing Campbell. He asked Campbell to exit her vehicle and walk back to his patrol car so he could conduct the traffic stop. Gress walked over to the driver's side of Campbell's vehicle to make sure she exited safely. However, Campbell remained in her vehicle.

Gress stayed on the driver's side of the vehicle and asked her again to exit her vehicle so he could conduct the traffic stop. Gress stated that he did not recall telling Campbell the reason for the traffic stop, even though she asked him why she had been stopped. Campbell did not get out of her vehicle. Gress told her multiple times that she needed to exit her vehicle, but she did not comply. She asked for Gress' supervisor to come to the location, and Gress stated that he had already tried to contact him. During this exchange, James repeatedly stated that Campbell was not going to get out of the vehicle. James continued talking over Gress and continued video recording the events, as well as narrating the video. James stated that he was transmitting the video through a "live-streaming app" on his cell phone. This caused Gress concern, and he told James to stop recording because it was an "officer safety issue." Gress testified that due to James' actions, he could not communicate with Campbell. He testified that he felt James was trying to control the situation by not permitting him to speak to Campbell.

Gress told Campbell that he was giving her a lawful order to get out of her vehicle and that if she did not comply, she would be arrested. Campbell did not comply with Gress' order.

Gress told her she was under arrest and needed to exit the vehicle. Campbell still refused to get out of her vehicle.

Gress next tried to reach into the vehicle through the driver's-side window, which was partially down, to unlock the door which Campbell had previously locked. A struggle ensued when he did so, and Gress ended up breaking the driver's-side window of the vehicle. He then tried reaching into the vehicle through the same window opening again. As a result of the struggle and broken glass, Gress had cuts on both of his arms. Gress subsequently disengaged from the struggle, backed away from the vehicle, and waited for other officers to arrive. Campbell exited the vehicle after two other troopers, including Gress' supervising officer, arrived on scene. Campbell and James were both arrested and taken into custody.

After Campbell and James were arrested, police conducted an inventory search. The search uncovered marijuana and several items of drug paraphernalia.

The State filed an information charging Campbell with seven counts: (1) assault of an officer in the third degree, (2) failure to obey a lawful order of the State Patrol, (3) speeding, (4) failure to use a child passenger restraint, (5) no valid registration, (6) possession of marijuana, and (7) possession of drug paraphernalia. Campbell pled not guilty to the charges.

A jury trial was held on counts 1, 2, and 5, and a bench trial was held on counts 3, 4, 6, and 7. At the jury trial on counts 1, 2, and 5, Gress testified, giving his account of the traffic stop as set forth above. During the testimony of Gress, the State offered and the court received into evidence the video of the traffic stop taken by the camera on Gress' cruiser.

Campbell testified in her own defense. She admitted that Gress told her to exit her vehicle and come back to his cruiser and that she did not comply. She testified that she did not get out of her vehicle because she was afraid. She stated that she was afraid because Gress did not tell her the reason for the stop when she asked him multiple times, he refused to look at her proof of insurance that she was trying to show him on her cell phone, and he disapproved of James' recording the stop. She

stated that based on those actions, she did not know what his intentions were. Campbell further testified that she is a rape victim and that based on her prior trauma, she was afraid of going back to Gress' cruiser with him. She also testified that she was concerned for her safety because Gress put his hand on his gun a few times during the traffic stop. Because of her fear, she told Gress to have his supervisor come to the scene and then she would exit her vehicle. She testified that she wanted the supervisor present to ensure her safety and to have a witness to the interactions between her and Gress.

Campbell also testified that during the encounter, she used her cell phone to call the 911 emergency dispatch service, at which point she perceived Gress to become upset. She admitted that the 911 dispatch officer told her that she should exit the vehicle, but that she was too afraid to do so given all that had occurred.

James also testified in Campbell's defense, and his video recording of the events was admitted into evidence.

At the close of the State's case in the jury trial, the district court sustained Campbell's motion for a directed verdict as to count 5, no valid registration. The jury acquitted Campbell of count 1, assault of an officer in the third degree, but found her guilty of count 2, failure to obey a lawful order of the State Patrol.

The bench trial on counts 3, 4, 6, and 7 was held after the other counts had been submitted to the jury. Sgt. Michael Grummert of the State Patrol testified for the State. As part of his job, he had received training on how to detect controlled substances, including marijuana, and had experience in doing so. He testified that he was familiar with what marijuana looks like and how it smells. He had also been trained in how marijuana is ingested.

Grummert conducted an inventory search of the vehicle after Campbell was arrested. He testified that during the search, he found a brown purse which contained a marijuana grinder, rolling papers, a marijuana pipe, and a small baggie of marijuana. Grummert testified that in his opinion, the

substance in the baggie was in fact marijuana. The purse was located on the back seat of the vehicle, behind the front passenger seat. Grummert testified that the purse appeared to be "a female's purse" and noted that Campbell was the only adult female in the vehicle at the time of the stop. Grummert also found rolling papers, a second marijuana grinder, and a purple cylinder containing marijuana in what he described as a "brown leather carpet bag." This bag was located on the middle of the passenger seat. Grummert testified that the rolling papers, grinders, and pipe are used for ingesting marijuana. Finally, Grummert located a black leather bag on the back seat behind the driver's seat which contained a black cylinder with marijuana residue and alcohol.

After the bench trial, the district court found Campbell guilty of count 3, speeding; count 6, possession of marijuana; and count 7, possession of drug paraphernalia. The court found Campbell not guilty of count 4, failure to use a child passenger restraint.

The district court subsequently sentenced Campbell to 7 days in jail on count 2, failure to obey a lawful order, and ordered her to pay fines for the other infractions.

## ASSIGNMENTS OF ERROR

Campbell assigns that the trial court erred in (1) finding there was sufficient evidence to convict her of failure to obey a lawful order of the State Patrol, (2) finding there was sufficient evidence to convict her of possession of marijuana, (3) finding there was sufficient evidence to convict her of possession of drug paraphernalia, and (4) imposing an excessive sentence on her conviction for failure to obey a lawful order of the State Patrol.

## STANDARD OF REVIEW

[1,2] In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility

of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Draper*, 295 Neb. 88, 886 N.W.2d 266 (2016). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

[3,4] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Draper, supra.* An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

*Sufficiency of Evidence—*
*Failure to Obey*
*Lawful Order.*

Campbell first argues that the evidence was insufficient to convict her of failure to obey a lawful order of the State Patrol. Campbell was convicted of violating Neb. Rev. Stat. § 81-2008 (Reissue 2014), which states: "Any person who fails or refuses to obey any lawful traffic direction or any lawful order of the superintendent or any of the subordinate officers or employees of the Nebraska State Patrol . . . shall be deemed guilty of a Class III misdemeanor."

It is undisputed that Gress was an employee of the State Patrol and that Campbell failed to obey Gress' order. Campbell focuses her argument on the lawfulness of Gress' order. She contends that his order was not lawful because he never informed her of the reason for the traffic stop and because he asked her to exit her vehicle less than a minute after he approached the vehicle. She argues that when Gress' actions are examined as a whole, it is evident that she had good reason to believe that Gress was not acting lawfully, nor within the scope of his duties.

The evidence shows that Gress asked Campbell to step out of her vehicle shortly after making contact. However, the timing of Gress' initial order does not make the order unlawful. His initial request was made because James was interrupting Gress and was holding his cell phone up to the window, obstructing Gress' view into the vehicle. There was also a rescue unit going by with its siren on, making it hard to communicate with Campbell.

At the time of Gress' initial request to exit the vehicle, Campbell had no reason to question his authority. She was driving her vehicle 14 miles over the posted speed limit at the time she was stopped. Gress was in a marked patrol car and was in uniform. It was daylight at the time of the stop, and there was heavy traffic on Highway 2, where she was stopped.

When Gress moved to the driver's side of the vehicle, he continued to order Campbell to exit her vehicle so he could conduct the traffic stop. Campbell refused to comply, and the situation escalated from there.

[5] In regard to Campbell's contention that Gress' order was unlawful because he did not tell her the reason for the traffic stop, she cites to no authority for her position and we find none. Gress stopped Campbell for speeding, a traffic violation, and therefore he had probable cause to stop her. See *State v. Verling*, 269 Neb. 610, 694 N.W.2d 632 (2005) (traffic violation, no matter how minor, creates probable cause to stop driver of vehicle). The fact that he did not tell her that she was stopped for speeding does not make his order to exit the vehicle unlawful.

We conclude that Campbell's argument that Gress' order was not lawful is without merit. Neb. Rev. Stat. § 81-2005(1) (Reissue 2014) gives all officers of the State Patrol, as peace officers, the power to enforce "the Nebraska Rules of the Road, and any other law regulating the registration or operation of vehicles or the use of the highways." As previously stated, Gress executed a traffic stop of Campbell's vehicle because

Campbell was speeding, a traffic violation. Campbell does not argue that the stop was unlawful. Gress was in uniform and was driving a marked patrol car at the time of the stop. Gress testified that he ordered Campbell out of her vehicle in order to complete the traffic stop because James was interfering with the stop. The video footage from Gress' cruiser, as well as the video taken by James, corroborates Gress' testimony. Gress asked or ordered Campbell to exit her vehicle multiple times, and he told her that if she did not comply, she would be violating a lawful order and would be arrested.

[6-8] Under Fourth Amendment case law, the Nebraska Supreme Court has held that it is reasonable for an officer to request that a driver sit in the patrol car during a traffic stop. See *State v. Verling, supra*. See, also, *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977) (once motor vehicle has been lawfully detained for traffic violation, police officer may order driver to get out of vehicle without violating Fourth Amendment's proscription of unreasonable searches and seizures). Therefore, it is reasonable and lawful for an officer to request that a driver exit his or her vehicle.

We conclude the evidence was sufficient to support a finding that Gress' order was lawful and that Campbell refused to obey that lawful order. Accordingly, the evidence was sufficient to support a conviction for failure to obey a lawful order of the State Patrol.

*Sufficiency of Evidence—*
*Possession of Marijuana*
*and Possession of Drug*
*Paraphernalia.*

Campbell next assigns that there was insufficient evidence to convict her of possession of marijuana and possession of drug paraphernalia. She makes the same argument in regard to both assignments of error, so we will address them together. Campbell argues that the evidence was insufficient, because James was in closer proximity to the purse

containing the baggie of marijuana and drug paraphernalia and had easier access to it. She also contends that her mere presence in the vehicle was not enough to find her guilty of the two offenses.

[9-11] A person possesses a controlled substance when he or she knows of the nature or character of the substance and of its presence and has dominion or control over it. *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017). Possession can be either actual or constructive, and constructive possession of an illegal substance may be proved by direct or circumstantial evidence. *Id.* "To be guilty, the defendant must possess the controlled substance 'knowingly or intentionally.'" *Id.* at 761, 890 N.W.2d at 210.

[12] Campbell did not have actual possession of the marijuana and paraphernalia, so the question before us is whether there is sufficient evidence from which a trier of fact could reasonably infer that she was in constructive possession, i.e., that she was aware of the presence of the marijuana and paraphernalia and had dominion or control over it. See *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). Mere presence at a place where a controlled substance is found is not sufficient to show constructive possession. *Id.* Instead, the evidence must show facts and circumstances which affirmatively link Campbell to the marijuana and paraphernalia so as to suggest that she knew of it and exercised control over it.

[13] The purse was located on the back seat of the vehicle behind the passenger seat where James had been sitting. The purse contained the baggie of marijuana, as well as drug paraphernalia. The purse belonged to either Campbell or James, as they were the only two adults in the vehicle. When Grummert was asked if he was able to determine who the owner of the purse was, he testified that it appeared to be "a female's purse" and that Campbell was the only adult female inside the vehicle at the time of the stop. Further, the fact that one is the driver of a vehicle, particularly over a long period of time, creates an inference of control over items in the vehicle. *State v. Howard, supra.* Campbell was driving at the time of the

stop, and the evidence showed that she and James had been in Kansas City, Missouri, before driving through Lincoln. They were on their way to Denver, Colorado, with California being their final destination. Campbell was apparently the owner of the vehicle as well, because she testified about looking for her registration for the vehicle when first pulled over.

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Howard, supra.* We conclude that the evidence, viewed in the light most favorable to the prosecution, was sufficient to find Campbell guilty of both possession of marijuana and possession of drug paraphernalia. Her second and third assignments of error are without merit.

*Excessive Sentence.*

Campbell argues that her sentence for failure to obey a lawful order of the State Patrol is excessive. She claims that she is entitled to judicial relief in the form of a reduced jail sentence or probation. However, Campbell admits in her brief that she has already served the 7-day jail sentence.

[14,15] While it is not a constitutional prerequisite for jurisdiction, the existence of an actual case or controversy is necessary for the exercise of judicial power. *Johnston v. Nebraska Dept. of Corr. Servs.*, 270 Neb. 987, 709 N.W.2d 321 (2006). A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *Id.* Because Campbell has already served the jail sentence she is challenging, her claim that her sentence is excessive does not rest upon existing facts and she lacks a legally cognizable interest in the outcome of the

issue. Therefore, her assignment of error challenging her jail sentence is moot.

[16] We recognize that the Nebraska Supreme Court has held that an appeal from a criminal conviction is not moot, even though a sentence for a criminal conviction has been fully served, when the defendant is subjected to "collateral consequences" resulting from the criminal conviction. *State v. Patterson*, 237 Neb. 198, 204, 465 N.W.2d 743, 748 (1991). We do not find that this exception to the mootness doctrine is applicable in the present case.

For the sake of completeness, even if Campbell's excessive sentence argument was not moot, the 7-day jail sentence is not excessive. The failure to obey a lawful order of the State Patrol is a violation of § 81-2008, a Class III misdemeanor, punishable by a maximum of 3 months' imprisonment, a $500 fine, or both. There is no minimum time for imprisonment. See Neb. Rev. Stat. § 28-106 (Cum. Supp. 2014). Campbell was sentenced to 7 days in jail. Campbell's sentence is within the statutory limits, and we find no abuse of discretion by the trial court in imposing a 7-day sentence.

## CONCLUSION

We conclude that the evidence was sufficient to find Campbell guilty of failure to obey a lawful order of the State Patrol, possession of marijuana, and possession of drug paraphernalia. We determine that Campbell's excessive sentence argument is moot and that even if it was not moot, it is without merit. Accordingly, Campbell's convictions and sentences are affirmed.

Affirmed.