IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ATHERTON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BRANDY R. ATHERTON, APPELLANT.

Filed December 31, 2018.    No. A-18-170.

Appeal from the District Court for Platte County: ROBERT R. STEINKE, Judge. Affirmed.

Timothy P. Matas, Platte County Public Defender, and Jessica S. Fauss for appellant.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman, and on briefs, Joe Meyer for appellee.

MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

MOORE, Chief Judge.

### INTRODUCTION

Brandy R. Atherton appeals her conviction in the district court for Platte County for possession of a controlled substance. Atherton claims that the district court erred in overruling her motion to suppress and in finding the record contained sufficient evidence to show that she knowingly or intentionally possessed a controlled substance. Finding no error, we affirm.

### BACKGROUND

On April 11, 2017, the Columbus Police Department was notified that Atherton and a companion were walking south along a Columbus street. Because a warrant for unpaid fines existed for Atherton's arrest, police officers were dispatched to her location. Officer Alysson Norris was the first to arrive at Atherton's location. Norris found Atherton standing next to her

companion and holding over her shoulder a golf club with a grocery bag hanging at its end. Upon Norris' request, Atherton confirmed her identity and acknowledged the arrest warrant.

Atherton handed the golf club and grocery bag to her companion. She explained to Norris and Officer Bradley Wangler, who arrived at the scene shortly after Norris, that the grocery bag contained food items she was taking to her mother. Concerned that the grocery bag might contain weapons, Wangler searched it. Inside the grocery bag, Wangler found and removed a gallon storage baggie containing seven prescription bottles.

Atherton explained to Wangler that she found the baggie of prescription bottles in her house while she was searching for antibiotics that were prescribed to her to treat an infection. When she entered the house, she saw the baggie of prescription bottles on the kitchen counter and a loose bat. Desiring to avoid the bat, she grabbed the baggie of prescription bottles and left the house. She planned to look for her antibiotics in the baggie when she arrived at her mother's house. She did not know to whom the pills in the baggie belonged, but felt they likely were the property of people who frequently broke into her house.

Wangler seized the baggie of prescription bottles and took them to the Columbus Police Department for inventory and identification. Wangler used a pill identification website to identify the pills in the prescription bottles as nine different substances. Eight of the pill tablets were carisoprobol, a Schedule IV controlled substance. Subsequent testing at the Nebraska State Patrol Crime Laboratory confirmed Wangler's findings.

Atherton was taken into custody on the outstanding warrant and transported to the Columbus Police Department. When asked whether she needed any medications, Atherton replied that the antibiotics she needed were at her mother's house. While Atherton was in the holding unit and after she was read her *Miranda* rights, the police questioned Atherton about the pills in the prescription bottles. Atherton restated that she found the prescription bottles in her house while searching for antibiotics that were prescribed to her and that they were placed in her house by another person. She added that she had not been to her house in over 2 months.

The State charged Atherton by information with possession of a Schedule IV controlled substance under Neb. Rev. Stat. § 28-416(3) (Reissue 2016). Alleging that the warrantless search and seizure of the grocery bag was unconstitutional under the Fourth Amendment of the United States Constitution and article I, § 7 of the Nebraska Constitution, Atherton filed a motion to suppress the evidence found in the grocery bag.

At the hearing on Atherton's motion to suppress, Norris, Wangler, and Atherton testified about Atherton's arrest and the search and seizure of the contents of the grocery bag. Norris testified that Wangler intercepted Atherton's grocery bag when it was 5 to 6 feet from her, which Norris acknowledged was outside of Atherton's wingspan. Wangler testified that Atherton was within "lunging distance" of the grocery bag when he seized it. He searched the grocery bag because he was concerned that it contained a weapon. Wangler had removed a handgun from Atherton's residence in the past and knew Atherton associated with violent felons. At the time of the arrest, Wangler feared that Atherton's companion might be one of those violent felons. He searched the bag because he was concerned for his and Norris' safety.

The district court entered an order denying Atherton's motion to suppress. The court found that Atherton was within lunging distance of the grocery bag and that it was within her immediate control when Wangler searched it. Wangler was reasonably concerned for officer safety when he

searched Atherton's bag. As a result, the court concluded that Wangler's warrantless search of Atherton's grocery bag fit the search-incident-to-arrest exception to the warrant requirement.

The district court held a stipulated bench trial. The court received a seven-page written stipulation, which Atherton, her attorney, and the prosecutor signed. Along with the written stipulation, the parties submitted other evidence by stipulation, including a recording of the police questioning of Atherton while she was in the holding unit, the outstanding warrant for her arrest, and the laboratory report verifying the substances contained within the prescription bottles. The contents of the stipulation are set forth in the above background. Atherton argued that the State did not meet its burden to prove that Atherton knew one of the substances she carried in the baggies of prescription bottles was a controlled substance.

On February 5, 2018, the district court entered an order finding Atherton guilty of possession of a schedule IV controlled substance. Atherton waived her right to the development of a presentence investigation report, and the Court sentenced Atherton to 1 year of probation.

Atherton appeals.

### ASSIGNMENTS OF ERROR

Atherton assigns, restated, that the district court erred in (1) overruling her motion to suppress and (2) finding the evidence was sufficient to show that she knowingly or intentionally possessed a controlled substance.

### STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate the Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Nielsen*, 301 Neb. 88, 917 N.W.2d 159 (2018).

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. McCurdy*, 301 Neb. 343, 918 N.W.2d 292 (2018). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Wells*, 300 Neb. 296, 912 N.W.2d 896 (2018).

### ANALYSIS

*Motion to Suppress Properly Denied.*

Atherton assigns that the district court erred in overruling her motion to suppress evidence of the contents of the grocery bag. She argues the search did not fit into the search-incident-to-arrest exception to the warrant requirement. After reviewing the district court's findings for clear error and independently reviewing the law, we conclude that Wangler's search of the grocery bag was reasonable as a search incident to a valid arrest.

The Fourth Amendment to the U.S. Constitution and article I, § 7 of the Nebraska Constitution guarantee against unreasonable searches and seizures. See *State v. Rivera*, 297 Neb. 709, 901 N.W.2d 272 (2017). Warrantless searches and seizures are per se unreasonable, subject to a few specifically established and well-delineated exceptions. See *State v. Zuniga*, 25 Neb. App. 706, 911 N.W.2d 869 (2018). The warrantless search exceptions recognized by the Nebraska Supreme Court include (1) searches undertaken with consent, (2) searches under exigent circumstances, (3) inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest. *Id.*

Here, Wangler searched Atherton's grocery bag without a search warrant and without her consent. As a result, the issue is whether the search fits within one of the other exceptions to the warrant requirement. We agree with the district court's determination that the search was constitutionally permissible as a search incident to a valid arrest.

A search made without a warrant is valid if made incidental to a lawful arrest. *State v. Wells*, 290 Neb. 186, 859 N.W.2d 316 (2015). After an arrest is made, the arresting officer may search an arrestee's person and the area within his or her immediate control to remove any weapons that he or she might use to resist arrest, to effect his or her escape, or to prevent the concealment or destruction of evidence. See *State v. Roberts*, 261 Neb. 403, 623 N.W.2d 298 (2001) (citing *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969)). A search without a warrant before an arrest is valid as an incident to the subsequent arrest if (1) the search is reasonably contemporaneous with the arrest and (2) probable cause for the arrest exists before the search. See *State v. Perry*, 292 Neb. 708, 874 N.W.2d 36 (2016).

Both Atherton and the State cite *Roberts, supra*, for the proposition that the meaning of the phrase "immediate control" extends beyond the area that is easily accessible to an arrestee at the time of the search. The State asserts that the present case is factually analogous to *Roberts, supra*, and therefore, we should find that the police search of Atherton's grocery bag to fit within the search-incident-to-arrest exception to the warrant requirement. Atherton, on the other hand, distinguishes the search of her grocery bag from the facts of *Roberts*.

In *Roberts, supra*, a law enforcement officer arrested Roberts at his girlfriend's apartment. Although the officer had a warrant for Roberts' arrest, he did not have a search warrant. Before placing Roberts in handcuffs, the officer allowed him to remove his outer layer of clothing. Roberts began arguing with another resident of the apartment unit, so the officer removed Roberts from the unit. While Roberts was leaving, another officer searched the outer layer of clothing that Roberts had removed. Inside of the clothing, the officer found methamphetamine and drug paraphernalia. Before Roberts' trial on drug charges, he filed a motion to suppress evidence found in his clothing, which motion the trial court denied. A jury later convicted him of possession of a controlled substance.

On appeal, Roberts argued that the search of his outer layer of clothing violated his right to be free from unreasonable searches and seizures because the clothing was not within the area of his immediate control. He asserted that his clothing was within the area of his immediate control only so long as he remained in a position where he reasonably might gain access to the clothing. The Nebraska Supreme Court rejected this argument. Citing *U.S. v. Morales*, 923 F.2d 621 (8th Cir. 1991), the court noted that "the meaning of the phrase 'immediate control' extends beyond the area that is easily accessible to an arrestee at the time of the search." *Id.* at 412, 623 N.W.2d at

306. The court concluded that Roberts' clothing was within the area of his immediate control and fit the search-incident-to-arrest exception to the warrant requirement. *Roberts, supra.*

The United States Supreme Court's decision in *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), further defined the meaning of "immediate control." In *Gant*, the police waited at Gant's house with a warrant to arrest him for driving with a suspended license. Before Gant came home, the police arrested and secured in patrol cars two other people at his house--one for providing a false name and the other for possessing drug paraphernalia. When Gant came home, the officers arrested him. He was handcuffed and locked in the back of a patrol car. The police then searched his car, inside of which they found a jacket that had cocaine in one of its pockets. Gant was charged with possession of a narcotic drug and possession of drug paraphernalia. Gant moved to suppress the evidence seized from his car on the ground that the search violated the Fourth Amendment. He argued that he posed no threat to the officers after he was handcuffed and placed in the patrol car and that he was arrested for a traffic offense for which no evidence could be found in his vehicle. The trial court denied his motion to suppress, and Gant was convicted of both charges.

The Arizona Supreme Court in *State v. Gant* found that the search was unreasonable because concerns for neither evidence preservation nor officer safety justified it. 216 Ariz. 1, 162 P.3d 640 (2007). The United States Supreme Court affirmed, explaining that the search-incident-to-arrest exception to the warrant requirement is limited to items within an arrestee's immediate control:

> That limitation, which continues to define the boundaries of the exception, ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy. [Citation omitted.] If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply. [Citation omitted.]

*Arizona v. Gant*, 556 U.S. at 339 (citing *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), and *Preston v. United States*, 376 U.S. 364, 84 S. Ct. 881, 11 L. Ed. 2d 777 (1964)).

The Court found that neither of the two rationales for the search-incident-to-arrest exception justified the officer's search of the man's vehicle. The officers had arrested the man and secured him in a patrol car at the time of the search. Further, the crime for which the man was arrested, driving without a license, did not require the police to search his car for evidence. As a result, the Supreme Court concluded that the search of the man's vehicle was unreasonable. *Gant, supra*.

According to *Arizona v. Gant, supra*, the phrase "immediate control" in the search-incident-to-arrest exception to the warrant requirement cannot extend beyond the area that is easily accessible to the arrestee at the time of the search. Thus, *Gant* applies a stricter definition to the phrase "immediate control" than *Roberts, supra*. After reviewing the trial court's factual findings and applying the definition of "immediate control" in *Gant*, we nevertheless conclude that the police search of Atherton's grocery bag was reasonable under the Fourth Amendment.

The concern for police safety, which justifies the search-incident-to-arrest exception to the warrant requirement, clearly justified Wangler's search of the grocery bag in this case. Although the district court noted that the record was somewhat unclear on this point, it found that Wangler intervened and took possession of the grocery bag just after Atherton passed it to her companion. Atherton was not within arm's reach of her companion when Wangler secured the bag, but she was within "lunging distance" of it. Based on Atherton's known association with violent felons, the police reasonably feared that the grocery bag contained a weapon that Atherton or her companion could use to resist arrest or effect escape. Further, unlike the scene in *Gant*, the record does not reflect that the police had completely secured the scene of the arrest when Wangler searched the grocery bag. Under these circumstances, Atherton was close enough to the grocery bag for it to be within her "immediate control" as defined by *Chimel, supra*, and *Gant, supra*.

After reviewing the district court's factual findings for clear error and independently reviewing the law, we conclude that the police search was reasonable under the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution as a search incident to a valid arrest.

*Sufficiency of Evidence: Knowing or Intentional Possession.*

Next, Atherton assigns that the district court erred in finding the evidence was sufficient to show that she knowingly or intentionally possessed a controlled substance. She argues that no evidence in the record supports the conclusion that she knew she was carrying a controlled substance when the police arrested her. We disagree.

Section 28-416(3) provides, in relevant part, that "[a] person knowingly or intentionally possessing a controlled substance . . . shall be guilty of a Class IV felony."

In the context of a criminal statute, "intentionally" means willfully or purposely, and not accidentally or involuntarily. *State v. Erpelding*, 292 Neb. 351, 874 N.W.2d 265 (2015). "Knowingly" means "willfully" as distinguished from "accidentally or involuntarily." In other words, to commit an act knowingly, a defendant must be aware of what he is doing. *State v. Bol*, 21 Neb. App. 931, 845 N.W.2d 606 (2014). A person possesses a controlled substance when he or she knows of the nature or character of the substance and of its presence and has dominion or control over it. *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017). Thus, a person need not know the exact nature of the substance in his or her possession, but instead only that the substance is a controlled substance of some kind. See *State v. Neujahr*, 248 Neb. 965, 540 N.W.2d 566 (1995) (finding jury instruction about culpability element of possession of controlled substance statute was appropriate because State only needed to prove defendant knew substance in his possession was controlled substance).

A fact proved by circumstantial evidence is nonetheless a proven fact. *State v. Olbricht*, 294 Neb. 974, 885 N.W.2d 699 (2016). Circumstantial evidence is not inherently less probative than direct evidence. *Id.* See, also, *State v. Campbell*, 24 Neb. App. 861, 900 N.W.2d 556 (2017) (constructive possession of controlled substance may be proved by direct or circumstantial evidence).

The record contains sufficient evidence to conclude that Atherton knowingly or intentionally possessed a controlled substance. Atherton carried a grocery bag containing seven prescription bottles that held a total of nine substances. None of the bottles showed that the

substances contained within them were prescribed to her. When the police arrested Atherton, she immediately moved to hand the grocery bag to her companion and told the officers that the bag contained food items for her mother. Atherton's attempt to hide the bag and her dishonesty about its contents suggest that she understood her possession of the bag's contents to be unlawful. After the prescription bottles were discovered by the police, Atherton indicated that she retrieved them from her house. Later, at the police station, Atherton told Wangler that another person left the prescription bottles in her house and that she intended to "get rid of them." Atherton's intent to dispose of the bottles also supports a conclusion that she knew the bottles she possessed were a controlled substance.

Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Atherton knowingly or intentionally possessed a controlled substance.

## CONCLUSION

The district court did not err in admitting the evidence contained within Atherton's grocery bag, and the evidence was sufficient to support the conclusion beyond a reasonable doubt that Atherton knowingly or intentionally possessed a controlled substance.

AFFIRMED.